**ALLAN APPLESTEIN TTEE FBO D.C.A. GRANTOR TRUST,**
Plaintiff–Appellee,

v.

**THE PROVINCE OF BUENOS AIRES, Defendant– Appellant.**

Docket No. 04–3288–CV.

United States Court of Appeals, Second Circuit.

Argued: March 28, 2005.

Decided: July 15, 2005.

Joel A. Chernov, Dreier LLP, New York, N.Y. (Marc S. Dreier, on the brief), for Plaintiff–Appellee.

Carmine D. Boccuzzi, Cleary, Gottlieb, Steen & Hamilton, New York, N.Y. (Jonathan I. Blackman, on the brief), for Defendant–Appellant.

Before: FEINBERG, SACK and KATZMANN, Circuit Judges.

FEINBERG, Circuit Judge.

The Province of Buenos Aires ("Buenos Aires") appeals from a judgment of the United States District Court for the Southern District of New York (Griesa, J.) granting summary judgment to Allan Applestein TTEE FBO D.C.A. Grantor Trust ("Applestein"). Applestein, a beneficial owner of a note issued by Buenos Aires, sued after Buenos Aires failed to make certain interest payments because of the Argentine economic crisis that began in 2001. In the district court, Buenos Aires argued that the complaint should be dismissed because Applestein, as a beneficial owner rather than the registered holder of the note, lacked standing to sue. Judge Griesa entered judgment in favor of Applestein. We affirm.

## I. Background

In 1998, Buenos Aires established a $650,000,000 note program by executing an indenture, governed by New York law, with Chase Manhattan Bank. In 2000, Applestein purchased a note in the principal amount of $1,020,000. Pursuant to the terms of the indenture, Applestein's note was one of a series of notes. The series was represented by a single Global Registered Note officially held by the Depositary Trust Company ("DTC") or DTC's nominee, Cede & Co. ("Cede"). The indenture provides that as long as "DTC (or any successor depositary for the ... Notes) or its nominee is the registered owner of the ... Global Registered Note, it will be considered the sole owner or Holder of the Notes represented thereby for all purposes hereunder." Applestein concedes being a "beneficial owner"—rather than the registered holder—of the note.

Section 508 of the indenture provides that "the Holder of any Note shall have the right, which is absolute and unconditional, to receive payment of the principal of and interest and any Additional Amounts on such Note ... and to institute suit for the enforcement of any such payment." The notes' Offering Memorandum, issued shortly before Applestein's purchase, provides that "DTC ... may grant

proxies or otherwise authorize its participants (or persons holding beneficial interests in the Global Registered Notes through such participants) to exercise any rights of a holder or take any other actions which a holder is entitled to take under the Indenture or the Notes."

In January 2002, Buenos Aires announced a moratorium on all interest and principal payments. Shortly thereafter, it failed to make a scheduled interest payment and Applestein filed suit in the Southern District of New York. By the time that case—which was not appealed and is not at issue here—was decided by a grant of summary judgment in Applestein's favor, Buenos Aires had failed to make a total of three interest payments. See *Allan Applestein TTEE FBO D.C.A. Grantor Trust v. The Province of Buenos Aires,* No. 02 Civ. 1773(TPG), 2003 WL 1990206 (S.D.N.Y. Apr.29, 2003). At no point in that proceeding did Buenos Aires suggest that Applestein lacked standing to sue.

Applestein initiated the action now on appeal in August 2003, after the note matured and Applestein was eligible to seek recovery not only of missed interest payments but of the principal as well.[1] In October 2003, Buenos Aires filed its answer, which raised seven affirmative defenses. None of those defenses asserted Applestein's lack of standing to sue. Shortly after Buenos Aires filed its answer, Applestein moved for summary judgment. Buenos Aires filed papers in November 2003 opposing Applestein's motion and supporting its own motion for summary judgment. In those papers, Buenos Aires asserted—apparently for the first

time—that Applestein lacked standing to sue on account of being a beneficial owner rather than the registered holder of the note.

On December 4, 2003, Applestein obtained, pursuant to the clause of the Offering Memorandum quoted above, permission to sue. Specifically, DTC and its nominee Cede authorized Lehman Brothers Inc., the participant through which Applestein owned the beneficial interest, "to pursue any and all of the rights that DTC has under Section 508 of the Indenture." In turn, Lehman Brothers gave Applestein the same authorization.

As the parties to this appeal stated at oral argument, Judge Griesa has been assigned all of the cases in the Southern District in which holders of financial instruments have sued either Buenos Aires or Argentina following default on the instruments. Judge Griesa held a hearing in March 2004 to resolve a number of the issues that were common to the cases. At the hearing, counsel for Buenos Aires and Argentina—who represented the defendants in all the cases, including the one on appeal here—raised the point that many of the plaintiffs in the other suits had not obtained authorization to sue from the registered holders. But "[i]n terms of the Province [of Buenos Aires] case" at issue here, counsel for Buenos Aires stated that Mr. Applestein had sought authorization from DTC through Lehman Brothers. Counsel stated, "So what happens here is there is a verification function that DTC plays, and this is relevant.... [T]here is a letter from DTC[ ] to the participant [Lehman Brothers] and from the participant to Mr. Applestein, so there is a role. That is

---

1. Pursuant to Section 113(a) of the indenture, Buenos Aires "irrevocably submit[ted] to the non-exclusive jurisdiction of any New York State or United States federal court sitting in the Borough of Manhattan, New York City ... over any suit, action or proceeding brought by any Holder, the Trustee or any of the agents under this Indenture against it arising out of or based upon this Indenture ...."

authorizing the suit ...." Judge Griesa rejected defense counsel's standing argument, concluding, "The fact is that these beneficial owners are entitled to sue. If there are some formalities that have to be carried out, they can be easily carried out, and that's that. That solves the issue of standing, and that is all there is to it. That is the end of it." Later, Judge Griesa reiterated that he was "holding that the beneficial owners have standing."

Judge Griesa entered judgment for Applestein in May 2004, and Buenos Aires brought this timely appeal.

## II. Discussion

On appeal, Buenos Aires argues that the indenture reserves the right to sue to the registered holder only, and that a beneficial owner such as Applestein therefore lacks standing. Buenos Aires suggests that, if this Court does not agree, it should certify to the New York Court of Appeals the question whether beneficial owners have standing to sue. In response, Applestein argues that the indenture does not preclude beneficial owners from bringing suit and that, even if it does, Applestein properly obtained permission to sue from the registered holder. Buenos Aires replies that the indenture "does not permit a beneficial owner to sue on the basis of DTC's *ex post* ratification of a suit instituted months earlier, as happened here."

We review grants of summary judgment de novo. *See, e.g., Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir.2003). In doing so, we "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Id.*

Although the parties' arguments focus mainly on whether the indenture may be interpreted to permit beneficial owners to bring suit for non-payment of interest and principal, resolving that question is not necessary to dispose of this appeal. Instead, we affirm the district court's judgment on the ground that Applestein obtained, as provided in the notes' Offering Memorandum, permission to sue from the registered holder.

■ Buenos Aires does not dispute that Applestein obtained permission to sue from DTC, but argues principally that such permission is ineffective because it was obtained after the action was initiated.[2] This is not a persuasive basis on which to reverse.

First, Buenos Aires appears to have waived the argument that the indenture does not give Applestein standing to sue. Buenos Aires did not raise the argument anywhere in its answer, and we are inclined to believe that an assertion of a party's incapacity to sue "should fall within the class of 'threshold defenses'—issues that must be raised and disposed of at the outset of the suit." 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1295 (3d ed.2004).

■ Second, Buenos Aires appears to have previously conceded that the permission Applestein obtained was effective. At the March 2004 hearing, counsel for Bue-

---

2. Buenos Aires also argues that Applestein's complaint refers to the indenture and the Pricing Supplement to the Offering Memorandum, but not to the Offering Memorandum itself, which contains the provision concerning obtaining authorization to sue. But insofar as the Pricing Supplement is a necessary addition to—and inherently dependent on—

the Offering Memorandum, reference made to the former implies reference made to the latter. In addition, Buenos Aires's contention that the Offering Memorandum does not explicitly provide for suits by beneficial owners but rather merely states that DTC "may" authorize such suits is irrelevant because DTC did grant such authorization here.

nos Aires stated that Applestein's obtaining letters from DTC and Lehman Brothers—which other plaintiffs in Applestein's position did not do—was an example of "authorizing the suit." Although Buenos Aires now argues that Applestein should not be allowed to proceed "on the basis of DTC's *ex post* ratification of a suit," we believe that Buenos Aires should be held to its apparent prior concession. Even if counsel's statement does not amount to an explicit concession of the validity of Applestein's authorization, Buenos Aires at the very least failed to suggest to the district court that the permission obtained was ineffective. The argument is therefore waived, and we consider "new argument[s] on appeal only when necessary to avoid manifest injustice." *Mellon Bank, N.A. v. United Bank Corp. of New York*, 31 F.3d 113, 116 (2d Cir.1994) (internal quotation marks omitted). We find no such "injustice" in refusing to consider the argument for the first time here.

Third, counsel for Buenos Aires indicated to us at oral argument that there is no statute of limitations on claims by beneficial owners for non-payment of interest and principal. Given that DTC has already indicated its willingness to authorize Applestein's suit, reversal for the reason Buenos Aires suggests would almost certainly result in Applestein's simply refiling the complaint—this time, with DTC's letter in hand—and a completely wasteful repetition of proceedings that have already occurred.

Finally, Buenos Aires invokes three decisions of the New York State courts that it says the district court failed to consider. But two of those decisions—*MacKay Shields LLC v. Sea Containers, Ltd.*, 300 A.D.2d 165, 751 N.Y.S.2d 485 (1st Dept. 2002), and *Caplan v. Unimax Holdings Corp.*, 188 A.D.2d 325, 591 N.Y.S.2d 28 (1st Dept. 1992)—do not involve beneficial owners obtaining authorization to sue from the registered holder, and are thus inapplicable to the appeal before us. The third case, *Oaktree Capital Mgmt., L.L.C. v. DGS Int'l Fin. Co. B.V.*, Index No. 602881/02 (N.Y.Sup.Ct. Apr. 11, 2003), is an unpublished opinion of the New York Supreme Court that dismissed a beneficial-owners suit on the basis of the owners' lack of standing. The court noted that "plaintiffs have submitted three letters, two of which they assert [the registered holder] is in the process of signing, where [the registered holder] ratifies the [plaintiffs'] actions." Id. at *3. The court did not decide, however, that the letters—assuming they were eventually signed by the registered holder—would have been ineffective on account of their being obtained after initiation of the lawsuit. We therefore decline to find *Oaktree* authority for reversing the judgment in this case.

### III. Conclusion

For the above reasons, we affirm the judgment of the district court.