22-1879-cv
*Commerzbank AG v. Wells Fargo Bank, N.A.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

     At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of October, two thousand twenty-four.

PRESENT:
> GUIDO CALABRESI,
> JOSÉ A. CABRANES,
> JOSEPH F. BIANCO,
> > *Circuit Judges.*

_____

COMMERZBANK AG,

        *Plaintiff-Appellant*,

ROYAL PARK INVESTMENTS SA/NV,

        *Plaintiff*,

    v.                                    22-1879-cv

WELLS FARGO BANK, N.A.,

        *Defendant-Appellee*.

_____

FOR PLAINTIFF-APPELLANT:      DAVID H. WOLLMUTH (Ryan A. Kane and Philip R. Schatz, *on the brief*), Wollmuth Maher & Deutsch LLP, New York, New York.

FOR DEFENDANT-APPELLEE:      JACOB ROTH (Traci L. Lovitt, Howard Sidman, and Ryan J. Andreoli, Jones Day, New York,

New York, *on the brief*), Jones Day, Washington, District of Columbia.

Appeal from a judgment of the United States District Court for the Southern District of New York (Katherine Polk Failla, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment, entered on August 2, 2022, is **AFFIRMED**.

Plaintiff-Appellant Commerzbank AG ("Commerzbank") appeals from the district court's award of summary judgment in favor of Defendant-Appellant Wells Fargo Bank, N.A. ("Wells Fargo") on claims arising from Commerzbank's investment in twenty-four certificates issued by residential mortgage-backed securities ("RMBS") trusts administered by Wells Fargo. Commerzbank alleged, *inter alia*, that Wells Fargo breached its contractual, fiduciary, and statutory duties as trustee by failing to monitor and address infirmities in the RMBS trusts, causing Commerzbank more than $100 million in losses. After discovery, the parties cross-moved for summary judgment, and the district court concluded that several overlapping threshold issues precluded Commerzbank from maintaining the majority of its claims. In particular, the district court held that: (1) Commerzbank lacked prudential standing to pursue claims based on twenty-one certificates that it sold prior to bringing this action; (2) Commerzbank lacked contractual standing to pursue claims based on fourteen certificates issued by trusts whose governing agreements contained negating clauses; (3) Minnesota state court orders precluded Commerzbank's claims based on thirteen certificates issued by trusts for which Wells Fargo appointed a separate trustee; (4) New York's statute of limitations barred Commerzbank's claims based on nine certificates issued by trusts that experienced an event of default no later than August 2008; and (5) Germany's statute of limitations barred Commerzbank's claims based on nineteen certificates that the parties agree accrued in Germany. After Commerzbank abandoned its

2

remaining claims, the district court entered final judgment in favor of Wells Fargo.[1]  This appeal followed.  We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

"We review the district court's rulings on summary judgment *de novo*, resolving all ambiguities and drawing all permissible inferences in favor of the nonmoving party."  *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 83 (2d Cir. 2020).  "Summary judgment is only appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Dalberth v. Xerox Corp.*, 766 F.3d 172, 182 (2d Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).  As set forth below, we conclude that the district court correctly determined that Wells Fargo was entitled to summary judgment on the claims at issue on appeal because, with respect to each certificate, Commerzbank lacked prudential standing to sue because it had sold the certificate (the "Sold Certificates") and/or it lacked contractual standing to pursue the claims because the certificate was issued by a trust whose governing agreement contained a negating clause (the "Negating Clause Certificates").  Because the Sold Certificates and the Negating Clause Certificates together cover all twenty-four certificates at

---

[1] Commerzbank abandoned its surviving claims—including those based on four additional RMBS certificates—by representing to the district court in a joint letter that there were "no remaining claims in this action as a result of the rulings" on summary judgment and that "judgment should be entered in Wells Fargo's favor," No. 15-cv-10033 (S.D.N.Y. July 29, 2022), ECF No. 618.  *See Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 425 F.3d 207, 210 (2d Cir. 2005) ("A party who loses on a dispositive issue that affects only a portion of his claims may elect to abandon the unaffected claims, invite a final judgment, and thereby secure review of the adverse ruling." (internal quotation marks and citation omitted)).  "Because [the district court] has entered a final judgment in this case, [Commerzbank] may seek review of [its] partial summary judgment order"; however, "we will consider[] only those portions of [the district court's] order *decided* adversely to [Commerzbank]."  *Empire Volkswagen Inc. v. World-Wide Volkswagen Corp.*, 814 F.2d 90, 94 (2d Cir. 1987).

issue,[2] we need not address Commerzbank's challenges to the district court's additional grounds for dismissal of the claims with respect to these certificates.

## I.     Sold Certificates

It is undisputed that, before commencing this lawsuit, Commerzbank sold twenty-one of the twenty-four certificates at issue. Commerzbank's ability to assert claims based on these Sold Certificates thus depends on whether Commerzbank retained litigation rights under those certificates following their sale. *See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) (explaining that a "plaintiff [must] have legal title to, or a proprietary interest in, the claim"). The district court concluded that Commerzbank lacked prudential standing to pursue claims based on the Sold Certificates, because New York law governs the sale of those certificates, and, under New York General Obligations Law § 13-107(1), "a transfer of any bond shall vest in the transferee all claims or demands of the transferrer." On appeal, Commerzbank challenges the district court's decision to apply New York law, arguing that English law—under which Commerzbank would retain its claims based on the Sold Certificates— should apply instead. We disagree.

"A federal court sitting in diversity must apply the choice of law rules of the forum state, in this case New York."[3] *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1538

---

[2] The twenty-one Sold Certificates include: ABFC 2005-HE2 (M5), ABFC 2005-HE2 (M6), ABFC 2005-OPT1 (M4), ABFC 2005-OPT1 (M5), ABFC 2005-OPT1 (M6), ABFC 2006-OPT1 (M1), ABFC 2006-OPT1 (M3), ABSHE 2005-HE5 (M8), CMLTI 2005-OPT4 (M5), CMLTI 2005-OPT4 (M6), GPMF 2005-AR4 (A2A), GPMF 2006-AR1 (A2A), GPMF 2006-AR1 (A3), GPMF 2006-AR2 (3A3), GPMF 2006-AR3 (4A2), MSAC 2005-WMC2 (M4), MSAC 2005-WMC3 (B1), MSAC 2005-WMC5 (B1), MSAC 2005-WMC5 (M6), MSAC 2006 HE1 (A4), and OOMLT 2006-2 (2A4). The three remaining Negating Clause Certificates include: ABFC 2006-OPT1 (M2), ABFC 2006-OPT2 (M2), and OOMLT 2006-2 (M2).

[3] The parties agree that New York choice-of-law rules apply, and that Commerzbank may not maintain its claims based on the Sold Certificates if Section 13-107(1) governs their sale.

4

(2d Cir. 1997).  New York courts apply a "center of gravity" or "grouping of contacts" approach to choice-of-law issues in contract cases.  *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 317 (1994).  Under that approach, courts consider the "factors identified in the Restatement," namely:  "the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties."  *In re Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 227–28 (1993) (citing Restatement (Second) of Conflict of Laws § 188(2)); *see also Zurich Ins. Co.*, 84 N.Y.2d at 318 (applying the "Second Restatement factors").  New York courts may also consider public policy "where the policies underlying conflicting laws . . . are readily identifiable and reflect strong governmental interests."  *In re Allstate*, 81 N.Y.2d at 226.  The overall purpose of this approach is to "establish which State has 'the most significant relationship to the transaction and the parties.'"  *Zurich Ins. Co.*, 84 N.Y.2d at 317 (quoting Restatement (Second) of Conflict of Laws § 188(1)).

In *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 383–86 (2d Cir. 2024), we analyzed Commerzbank's ability to bring claims based on certificates it had sold to third parties.  As here, the controlling issue was whether New York or English law applied to the sale of those certificates.  *Id.* at 384.  Applying the Second Restatement factors,[4] we concluded "that New York has the most significant relationship to the transactions at issue," because, although the contracts to sell the certificates "were negotiated and made in England," the transfers took place at the Depository Trust Company ("DTC") in New York and were governed by New York law, the certificates were held at the DTC in New York, and a majority of Commerzbank's counterparties had their principal place of business in New York.  *Id.* at 384–86.  Accordingly, we held that New

---

[4] Because that case was transferred from the Southern District of Ohio, we applied the choice-of-law principles of Ohio, which "applies the Restatement of Law 2d, Conflict of Laws."  *U.S. Bank*, 100 F.4th at 384 (citing *Am. Interstate Ins. Co. v. G & H Serv. Ctr., Inc.*, 112 Ohio St. 3d 521, 522 (2007) (Ohio courts have "adopted the Restatement [(Second) of Conflict of Laws] in its entirety.")).

York law applied, and that Commerzbank could not bring claims based on those certificates. *Id.* at 386.

Here, faced with a similar set of facts, we likewise conclude that New York is the place with the most significant relationship to Commerzbank's sale of the Sold Certificates. To be sure, construing the evidence in the light most favorable to Commerzbank, the places of contracting and negotiation weigh in favor of applying English law. *See, e.g.*, App'x at 3466–67 (stating that Commerzbank's "London employees solicited all bids" and "executed the sales" of the Sold Certificates). However, as in *U.S. Bank*, each of the other factors weighs in favor of applying New York law. *See* 100 F.4th at 384–86.

It is undisputed that the DTC, which is located in New York, held the Sold Certificates and effectuated their transfers. Moreover, the Pooling and Servicing Agreements ("PSAs") for the trusts that issued the Sold Certificates are governed by New York law and provide that all transfers of the certificates would be made according to the DTC's procedures. Thus, as in *U.S. Bank*, "the transactions . . . occur[red] in and are governed by the laws of New York," and "[a]s a result, the place of performance factor weighs in favor of applying New York law." *Id.* at 385. Because the Sold Certificates were held by the DTC in New York, the location of the subject matter factor likewise favors applying New York law. *See id.* Finally, although the London branch of Commerzbank conducted the sales, Commerzbank is domiciled in Germany, *see In re N.Y. Agency & Other Assets of Bank of Credit & Commerce Int'l*, 90 N.Y.2d 410, 422 (1997) ("A branch or agency of a bank is not a separate entity."), and a majority of Commerzbank's counterparties had their principal place of business in New York. "Given that a majority of the counterparties have this connection to New York and that there is little information about the other counterparties in

6

the record, including whether any have their principal place of business or are incorporated in England, this last factor weighs in favor of New York." *U.S. Bank*, 100 F.4th at 386.

In sum, because New York is on balance the place with the most significant relationship to the sale, Section 13-107(1) applies, and Commerzbank cannot assert claims based on the twenty-one Sold Certificates.[5]

## II. Negating Clause Certificates

The remaining three certificates at issue were issued by trusts whose PSAs contain the following negating clause: "Nothing in this Agreement or in the Certificates, expressed or implied, shall give to any Person, other than the Certificateholders, the parties hereto and the NIMS Insurer and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under this Agreement."[6] App'x at 1900 (PSA for ABFC 2006-OPT1); *see also id.* at 1918–19 (PSA for ABFC 2006-OPT2); *id.* at 1988 (PSA for OOMLT 2006-2). It is undisputed that Commerzbank is not a Certificateholder, a party to the PSAs, or a NIMS Insurer, and that Commerzbank did not obtain authorization from the Certificateholder to pursue claims under the PSAs until after Wells

---

[5] We note that New York public policy buttresses this conclusion. *See In re Allstate*, 81 N.Y.2d at 226 (permitting, in a choice-of-law analysis, consideration of "the policies underlying conflicting laws in a contract dispute," when those policies "are readily identifiable and reflect strong governmental interests"). As we have recognized, "with regard to the law governing financial transactions arranged in New York, New York has emphasized the state's role as an international financial center." *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 394 (2d Cir. 2001) (citing *Intercontinental Plan., Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 383 (1969)); *see also J. Zeevi & Sons, Ltd. v. Grindlays Bank (Uganda) Ltd.*, 37 N.Y.2d 220, 227 (1975) (concluding that New York's interest in "maintain[ing] its pre-eminent financial position" and "serving as an international clearinghouse and market place for a plethora of international transactions" means that "its laws should be accorded paramount control over the legal issues presented" by transactions utilizing New York's financial system). Accordingly, New York public policy also weighs in favor of applying Section 13-107(1) to the transfers of the Sold Certificates.

[6] The PSAs define "Certificateholder" as "[t]he Person in whose name a Certificate is registered in the Certificate Register." App'x at 1897; *see also id.* 1896, 1898 (providing that the relevant certificates "shall be registered in the name of the Depository or its nominee," namely, the DTC or Cede & Co). The PSAs define "NIMS Insurer" as "[a]ny insurer that is guaranteeing certain payments under notes secured by collateral." App'x at 1899.

Fargo moved for summary judgment. Nonetheless, Commerzbank argues that the district court erred in concluding that the negating clauses barred its claims based on the Negating Clause Certificates. We are unpersuaded.

First, Commerzbank argues that the negating clauses improperly elevate "form over substance" and should not be enforced to preclude claims by a beneficial owner, like Commerzbank, when the Certificateholder, in this case Cede & Co., has "zero interest in the claims." Appellant's Br. at 25. This argument is without merit. "Under New York law, where a provision in a contract expressly negates enforcement by third parties, that provision is controlling." *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 859 F.2d 242, 249 (2d Cir. 1988). "[E]ven where a contract expressly sets forth obligations to specific individuals or categories of individuals, those individuals do not have standing to enforce those obligations . . . when the contract contains a negating clause." *Wilson v. Dantas*, 746 F.3d 530, 537 (2d Cir. 2014) (internal quotation marks and citation omitted). The negating clauses in the PSAs at issue provide, as relevant here, that only Certificateholders may bring claims under the agreements—beneficial owners may not. *See* App'x at 1896–97 (differentiating between a Certificateholder and a "Certificate Owner," which is defined as a "any beneficial owner" of a certificate). Thus, absent effective authorization from the Certificateholder, Commerzbank lacks contractual standing to bring claims based on the Negating Clause Certificates. *Cf. Applestein v. Prov. of Buenos Aires*, 415 F.3d 242, 245 (2d Cir. 2005) (concluding that beneficial owner had contractual standing to sue after receiving permission from the registered holder).

Next, Commerzbank argues that Wells Fargo waived any defense based on the negating clauses because it did not raise contractual standing as a defense until summary judgment. We disagree. As we have recognized, "an assertion of a party's incapacity to sue [under a contract]

8

should fall within the class of threshold defenses—issues that must be raised and disposed of at the outset of the suit." *Applestein*, 415 F.3d at 245 (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 9(a)(2) ("To raise [a party's capacity or authority to sue], a party must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge."). Here, in advance of its 2020 motion for summary judgment, Wells Fargo raised the issue of contractual standing in: (1) its 2015 motion to dismiss in a related case,[7] *Phoenix Light SF Ltd. v. Wells Fargo Bank, N.A.*, No. 14-cv-10102 (S.D.N.Y. May 1, 2015), ECF No. 30 at 33–35 (arguing that "Plaintiffs Lack Standing Under The 'Negating Clauses'"); (2) its 2016 letter to the district court identifying the arguments it planned to raise in its motions to dismiss against plaintiffs including Commerzbank, App'x at 262–63 (stating that certain claims asserted by plaintiffs are "barred by the contracts' 'negating clauses'"); (3) its 2017 answer to Commerzbank's complaint, *id.* at 353 (pleading "lack of standing" as an affirmative defense); and (4) various document requests and depositions during discovery, *see, e.g.*, *id.* at 4443, 4449–51. We thus conclude that Wells Fargo adequately raised the issue "at the outset of the suit," and did not waive the ability to argue it on summary judgment. *Applestein*, 415 F.3d at 245; *see also India.Com, Inc. v. Dalal*, 412 F.3d 315, 322 (2d Cir. 2005) (holding that a negating clause defense was not waived where "the Clause and the theory that [the counter-claim plaintiff] was a third-party beneficiary were repeatedly mentioned in the District Court proceedings," including in the "Answer to the counterclaims").

---

[7] While that motion to dismiss was pending, Commerzbank filed its complaint against Wells Fargo along with a statement of relatedness, acknowledging that the motion to dismiss was pending and requesting that the two cases be treated as related. No. 15-cv-10033 (S.D.N.Y. Dec. 24, 2015), ECF No. 3 at 2 (explaining that "This case . . . and the Phoenix Light Action are rooted in the same basic alleged facts and legal theories against the same defendant, Wells Fargo"). The district court accepted Commerzbank's request, and the two cases were ultimately resolved in the same summary judgment order. *See generally Phoenix Light SF Ltd. v. Wells Fargo Bank, N.A.*, Nos. 14-cv-10102 (KPF) (SN), 15-cv-10033 (KPF) (SN), 2022 WL 2702616 (S.D.N.Y. July 12, 2022).

Finally, Commerzbank argues that the authorization it received from Cede & Co. to pursue claims based on the Negating Clause Certificates cured any defect in its contractual standing. The district court considered this argument on summary judgment and concluded that the authorization Commerzbank received to pursue those claims was untimely under Federal Rule of Civil Procedure 17(a)(3) because Wells Fargo "raised the issue of Commerzbank's contractual standing beginning in 2015 and continuing through the present," but "Commerzbank did not receive authorization to pursue this action until April and May 2020." 2022 WL 2702616, at *17. We review the district court's dismissal under Rule 17(a) for abuse of discretion. *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l*, 790 F.3d 411, 417 (2d Cir. 2015). "Under this deferential standard, we will reverse a district court only if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 256 (2d Cir. 2018) (internal quotation marks and citation omitted).

Rule 17(a)(1) requires that an action "be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). This rule "ensures that only a person who possesses the right to enforce a claim . . . can bring the claim." *Cortlandt St. Recovery Corp.*, 790 F.3d at 420 (alteration adopted) (internal quotation marks and citation omitted). However, under Rule 17(a)(3), a district court "may not dismiss an action for failure to [comply with subsection (a)(1)] until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3); *accord Commonwealth of Pennsylvania Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 814 F.3d 641, 643 (2d Cir. 2016) (per curiam) ("Rule 17(a)(3) permits ratification of a claim within a 'reasonable time' after

10

a standing objection is raised."). In other words, "[a] district court may deny a Rule 17(a) motion as untimely if it is not filed within a reasonable time after a standing objection is raised." *Nat'l Credit Union Admin. Bd*, 898 F.3d at 256 (internal quotation marks and citation omitted). As discussed above, although Wells Fargo repeatedly raised the issue of contractual standing, including as early as 2015, Commerzbank did not receive authorization to pursue claims based on the Negating Clause Certificates until April and May 2020. Given Commerzbank's nearly five-year delay, the district court acted well within its discretion in concluding that Cede & Co.'s ratification of Commerzbank's claims was untimely under Rule 17(a)(3). *See id.* at 259 (holding that plaintiff's delay of "over a year after Defendants challenged its standing . . . . was not a reasonable time after the standing objection was raised" (alterations adopted) (internal quotation marks and citation omitted)); *Commonwealth of Pennsylvania Pub. Sch. Emps.' Ret. Sys.*, 814 F.3d at 643 (similar).

Thus, because Commerzbank's authorization to pursue claims based on the Negating Clause Certificates was ineffective, Commerzbank lacks contractual standing to bring those claims.

\* \* \*

We have considered Commerzbank's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11