17-756-cv
*Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2017

No. 17-756-cv

NATIONAL CREDIT UNION ADMINISTRATION BOARD,
as Liquidating Agent of U.S. Central Federal Credit Union, Western
Corporate Federal Credit Union, Members United Corporate Federal
Credit Union, Southwest Corporate Federal Credit Union, and
Constitution Corporate Federal Credit Union,
NATIONAL CREDIT UNION ADMINISTRATION BOARD
on Behalf of the NGN Trusts,
GRAEME W. BUSH, as Separate Trustee,
*Plaintiffs-Appellants*,

v.

U.S. BANK NATIONAL ASSOCIATION,
BANK OF AMERICA, NATIONAL ASSOCIATION,
*Defendants-Appellees*,

NCUA GUARANTEED NOTES TRUST 2010-R1,
NCUA GUARANTEED NOTES TRUST 2010-R2,
NCUA GUARANTEED NOTES TRUST 2010-R3,
NCUA GUARANTEED NOTES TRUST 2011-R1,
NCUA GUARANTEED NOTES TRUST 2011-R2,

NCUA GUARANTEED NOTES TRUST 2011-R3,
NCUA GUARANTEED NOTES TRUST 2011-R4,
NCUA GUARANTEED NOTES TRUST 2011-R5,
NCUA GUARANTEED NOTES TRUST 2011-R6,
NCUA GUARANTEED NOTES TRUST 2011-M1,
*Nominal Defendants*.

———

On Appeal from the United States District Court
for the Southern District of New York.

———

ARGUED: MARCH 8, 2018
DECIDED: AUGUST 2, 2018

———

Before: CABRANES and CARNEY, *Circuit Judges*, and CAPRONI, *District Judge*.[*]

———

The Plaintiff-Appellant National Credit Union Administration Board manages the National Credit Union Administration (together, "NCUA"), an independent federal agency responsible for regulating and insuring federal credit unions. In 2009 and 2010, NCUA liquidated five corporate credit unions and succeeded to ownership of their assets. These assets included certificates they held in

———

[*] Judge Valerie Caproni, of the United States District Court for the Southern District of New York, sitting by designation.

residential mortgage-backed securities trusts ("RMBS Trusts"). NCUA then entered into a series of agreements to resecuritize the certificates and transferred most of the certificates into newly created and independent statutory trusts.

In late 2014 and early 2015, NCUA brought contractual, common law, and statutory claims against the trustees of the RMBS Trusts, Defendants-Appellees U.S. Bank National Association ("U.S. Bank") and Bank of America, National Association ("Bank of America"; jointly, "Defendants"). Where NCUA had placed an RMBS Trust certificate into a statutory trust, it brought derivative claims on behalf of the statutory trust.

The United States District Court for the Southern District of New York (Katherine B. Forrest, *Judge*) twice dismissed the derivative claims. The District Court subsequently denied NCUA's motion for leave to supplement its Second Amended Complaint. Judgment was entered on March 16, 2017.

On appeal, NCUA argues that the District Court (1) erroneously determined that NCUA lacks derivative standing and (2) abused its discretion when it denied NCUA's motion for leave to supplement the Second Amended Complaint. Following the plain language of the contracts under which NCUA transferred the RMBS Trust certificates, we conclude that the District Court correctly found that NCUA lacks derivative standing to bring claims based on those certificates. We also conclude that the District Court did not abuse its discretion when it denied NCUA's motion for leave to supplement.

Accordingly, we **AFFIRM** the District Court's judgment.

————

DAVID C. FREDERICK, Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C., Washington, DC (Scott K. Attaway and Frederick Gaston Hall, Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C., Washington, DC; and George A. Zelcs and John A. Libra, Korein Tillery LLC, Chicago, IL, *on the brief*), *for Plaintiffs-Appellants.*

FRED A. ROWLEY, Munger, Tolles & Olson LLP, Los Angeles, CA (James C. Rutten, Jacob S. Kreilkamp, Wesley T.L. Burrell, and Adam P. Barry, Munger, Tolles & Olson LLP, Los Angeles, CA; David F. Graham, Sidley Austin LLP, Chicago, IL; and Isaac S. Greaney and Daniel Gimmel, Sidley Austin LLP, New York, NY, *on the brief*), *for Defendant-Appellee Bank of America, National Association.*

David F. Adler, Louis A. Chaiten, and Amanda R. Parker, Jones Day, Cleveland, OH, *for Defendant-Appellee U.S. Bank National Association.*

JOSÉ A. CABRANES, *Circuit Judge*:

The Plaintiff-Appellant National Credit Union Administration Board manages the National Credit Union Administration (together, "NCUA"), an independent federal agency responsible for regulating and insuring federal credit unions. In 2009 and 2010, NCUA liquidated five corporate credit unions and succeeded to their assets, including certificates they held in residential mortgage-backed securities trusts ("RMBS Trusts"). NCUA then entered into a series of agreements to resecuritize the certificates and transferred most of the certificates into newly created and independent statutory trusts.

In late 2014 and early 2015, NCUA brought contractual, common law, and statutory claims against the trustees of the RMBS Trusts, Defendants-Appellees U.S. Bank National Association ("U.S. Bank") and Bank of America, National Association ("Bank of America"; jointly, "Defendants"). Where NCUA had placed an RMBS Trust certificate into a statutory trust, it brought derivative claims on behalf of the statutory trust.

The United States District Court for the Southern District of New York (Katherine B. Forrest, *Judge*) twice dismissed the derivative claims. The District Court subsequently denied NCUA's motion for leave to supplement its Second Amended Complaint. Judgment was entered on March 16, 2017.

5

On appeal, NCUA argues that the District Court (1) erroneously determined that NCUA lacks derivative standing and (2) abused its discretion when it denied NCUA's motion for leave to supplement the Second Amended Complaint. Following the plain language of the contracts under which NCUA transferred the RMBS Trust certificates, we conclude that the District Court correctly found that NCUA lacks derivative standing to bring claims based on those certificates. We also conclude that the District Court did not abuse its discretion when it denied NCUA's motion for leave to supplement.

Accordingly, we **AFFIRM** the District Court's judgment.

## I.      BACKGROUND[1]

### A. Overview of NCUA

NCUA is an independent federal agency managed by the NCUA Board.[2] It is responsible for, among other things, chartering and regulating federal credit unions, and operating and managing credit union insurance and stabilization funds. Two of NCUA's capacities are relevant here: (1) to act as liquidating agent for failing or failed credit unions ("NCUA Liquidating Agent"), and (2) to act as

---

[1] On review of a District Court's decision granting a motion to dismiss, we take as true the facts set forth in the complaint. *Horowitz v. 148 S. Emerson Assocs. LLC*, 888 F.3d 13, 16 n.1 (2d Cir. 2018). The facts recited in this section are thus stated as alleged in NCUA's Second Amended Complaint and the documents attached to it.

[2] 12 U.S.C. § 1752a(a).

6

guarantor of debts ("NCUA Guarantor"). In this litigation NCUA alleges that these are "distinct capacit[ies],"[3] and in other litigation NCUA has represented that they are "separate legal entit[ies]."[4] Where appropriate, we distinguish between these two "capacities" or "entities."

*NCUA Liquidating Agent.* When an insured credit union is in danger of failing, NCUA Liquidating Agent may close the credit union and appoint itself liquidating agent.[5] Upon liquidation, NCUA Liquidating Agent "succeed[s] to . . . all rights, titles, powers, and privileges of the credit union, and of any member, accountholder, officer, or director of such credit union with respect to the credit union and the assets of the credit union."[6] NCUA Liquidating Agent thereafter can "collect all obligations and money due the credit union,"[7] and may "realize upon the assets of the credit union."[8]

---

[3] Second Am. Verified Derivative Compl. ("SAC") at 6, *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, No. 1:14-cv-9928 (S.D.N.Y. July 17, 2015), ECF No. 92 ("Second Amended Complaint").

[4] Reply Mem. of Law to Pls.' Obj. to Mot. to Substitute the National Credit Union Administration Board, as Liquidating Agent for the New London Security Federal Credit Union, in Place of Pls. at 4–5, *Goldblatt v. Wells Fargo Advisors LLC*, No. 3:10-cv-924 (D. Conn. Jan. 18, 2011), ECF No. 76.

[5] *See* 12 U.S.C. § 1787(a)(1)(A).

[6] 12 U.S.C. § 1787(b)(2)(A)(i).

[7] 12 U.S.C. § 1787(b)(2)(B)(ii).

[8] 12 U.S.C. § 1787(b)(2)(E).

*NCUA Guarantor.* NCUA Guarantor acts as an agency of the executive branch, and can provide a guarantee, backed by the full faith and credit of the United States, of the timely repayment of debts.

## B. NCUA Liquidates Credit Unions and Succeeds to Certificates in Residential Mortgage-Backed Securities Trusts

In 2009 and 2010, NCUA Liquidating Agent placed five failing corporate credit unions (jointly, "the CCUs") into conservatorship and involuntary liquidation.[9] At the time of their liquidation, the CCUs held investment securities, commercial mortgages, and other "securitized" assets[10] (the "Legacy Assets"). Those Legacy Assets included certificates in ninety-eight residential mortgage-backed securities trusts ("RMBS Trusts"). Each RMBS Trust consisted of hundreds of individual residential mortgage loans that were pooled together and securitized to investors. The RMBS Trust certificates entitled the CCUs to fixed principal and interest payments, which derived from the income streams generated as borrowers made monthly payments on the mortgage loans in the RMBS Trusts. The

---

[9] The five CCUs were U.S. Central Federal Credit Union, Western Corporate Federal Credit Union, Members United Corporate Federal Credit Union, Southwest Corporate Federal Credit Union, and Constitution Corporate Federal Credit Union.

[10] Securitization is the process of converting assets "into negotiable securities for resale in the financial market, allowing the issuing financial institution to remove assets from its books, and thereby improve its capital ratio and liquidity, and to make new loans with the security proceeds if it so chooses." *Securitize*, *Black's Law Dictionary* (10th ed. 2014).

8

CCUs purchased the certificates at a combined original face value of approximately $6.8 billion.

On liquidation, NCUA Liquidating Agent succeeded to the Legacy Assets, including the certificates in the ninety-eight RMBS Trusts. NCUA Liquidating Agent also succeeded to any claims that the CCUs had as certificateholders in the RMBS Trusts.

*C. NCUA's Resecuritization of the RMBS Trust Certificates*

In 2010, the NCUA Board created the NCUA Guaranteed Notes ("NGNs") Program to liquidate and resecuritize the Legacy Assets. Under the program, NCUA Liquidating Agent transferred certain Legacy Assets, including most of the RMBS Trust certificates, into trusts (the "NGN Trusts"). The NGN Trusts then issued approximately $28.3 billion in NGNs, holders of which would receive payment from the Legacy Assets' cash flows. NCUA Guarantor provided a guaranty of the timely repayment of all principal and interest to the investors in the NGNs.

Each NGN Trust issued the NGNs pursuant to a set of three key agreements ("Agreements"): (1) an NGN Trust Agreement, (2) an

NGN Indenture Agreement, and (3) an NGN Guaranty Agreement.[11] The NGN Agreements[12] were executed on the same day.[13]

### 1. NGN Trust Agreements

The NGN Trust Agreements established each NGN Trust as "a 'statutory trust' under the Delaware Statutory Trust Act,"[14] and are governed by Delaware law.[15] As Delaware statutory trusts, the NGN Trusts are "separate legal entit[ies]."[16] The Trust Agreements appointed Wells Fargo Delaware Trust Company, N.A. ("Wells

---

[11] Each NGN Trust entered into its own separate NGN Agreements. In its Second Amended Complaint, NCUA represented that the sets of NGN Agreements "are substantially similar" to one another, and attached "[r]epresentative examples." Second Amended Complaint at 9 n.4. Because those documents were incorporated by reference into the complaint, we may consider them when reviewing the District Court's decision here. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

[12] In this opinion, we use the following pairs of terms interchangeably: "NGN Agreements" and "Agreements"; "NGN Trust Agreements" and "Trust Agreements"; "NGN Indenture Agreements" and "Indenture Agreements"; and "NGN Guaranty Agreements" and "Guaranty Agreements."

[13] Opinion & Order at 8, *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, No. 1:14-cv-9928 (S.D.N.Y. Feb. 25, 2016), ECF No. 120 ("May 2015 Order").

[14] SAC, Ex. C at 4, § 2.06, *id.*, No. 1:14-cv-9928 (S.D.N.Y. July 17, 2015), ECF No. 92-3 ("Trust Agreement").

[15] *Id.* at 34, § 10.13.

[16] Del. Code Ann. tit. 12, § 3801(g).

Fargo") as Owner Trustee.[17] NCUA Liquidating Agent was designated the "Seller."[18]

In the Trust Agreements' Conveyance Clause, NCUA Liquidating Agent (or "Seller") agreed to "contribute, transfer, convey and assign to, and deposit with, the [NGN] Trust[s], without recourse, all of [NCUA's] right, title and interest in and to the . . . Trust Estate," which included RMBS Trust certificates.[19] The Trust Agreements further provided that the conveyance "is absolute and is intended by the parties, other than for federal, state and local income and franchise tax purposes, to constitute a sale . . . to the Trust."[20]

In exchange, NCUA Liquidating Agent received Notes[21] and Owner Trust Certificates in the Trust Estate.[22] Wells Fargo, as Owner Trustee, agreed to "hold the Trust Estate . . . in trust for the exclusive

---

[17] Trust Agreement at 4, § 2.04.

[18] *Id.* at 1, para. 1.

[19] *Id.* at 8, § 3.01. The NCUA Board nevertheless allegedly retained some interests not relevant here. *See* Appellants' Opening Br. 8 n.5.

[20] Trust Agreement at 6, § 2.14(b).

[21] NCUA Guarantor provided a guarantee of the timely repayment of these Notes, making them NCUA Guaranteed Notes, or "NGNs." *See post* note 37 and accompanying text.

[22] Trust Agreement at 8, § 3.01.

use and benefit of all present and future Certificateholders of the Trust Estate."[23]

The Notes, which were subsequently sold to investors, entitle the investors to cash flows from the Trust Estate. The Owner Trust Certificates are retained by NCUA Liquidating Agent. The Owner Trust Certificates entitle NCUA Liquidating Agent to a final distribution of the NGN Trusts' remaining assets after the Trusts have satisfied and discharged all outstanding obligations, including obligations to the holders of the Notes.[24]

### 2. NGN Indenture Agreements[25]

After receiving NCUA Liquidating Agent's interests in the Trust Estate, the NGN Trusts entered into the NGN Indenture Agreements with The Bank of New York Mellon ("BNYM") to fund the Notes. The Indenture Agreements appointed BNYM as Indenture

---

[23] *Id.* at 7, § 2.14(c).

[24] *See id.* at 24–25, § 8.01.

[25] A trust indenture transfers legal title in securities to a trustee for the benefit of individual bondholders and other creditors. The device is used to settle the security interests on a single entity when it would be "impractical to have the security run to the group of bondholders directly or to have a separate security instrument for each bondholder." Myron Kove et al., *The Law of Trusts and Trustees* § 250, Westlaw (updated June 2018).

Trustee,[26] and expressly stated that they were to be governed by New York law.[27] NCUA Liquidating Agent is not a party to the Indenture Agreements.[28] The Indenture Agreements, however, define "Guarantor" as "NCUA in its capacity as an Agency of the Executive Branch of the United States" (*i.e.*, NCUA Guarantor).[29]

In each Indenture Agreement, the NGN Trusts granted to BNYM as Indenture Trustee, "for the benefit of the Holders of the Notes and the Guarantor, all of the [NGN Trusts'] right, title and interest in and to" various assets, including the RMBS Trust certificates in the Trust Estate.[30] That grant expressly included "all present and future claims, demands, causes and choses in action in respect of" the assets.[31]

BNYM, for its part, agreed to hold the assets "in trust for the exclusive use and benefit of all present and future Noteholders and the Guarantor."[32] BNYM also assumed a duty "to institute . . . any suit

---

[26] SAC, Ex. B at 5, paras. 1, 6, *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, No. 1:14-cv-9928 (S.D.N.Y. July 17, 2015), ECF No. 92-2 ("Indenture Agreement").

[27] *Id.* at 89, § 10.10.

[28] *See id.* at 5, para. 1.

[29] *Id.* at 14, para. 4.

[30] *Id.* at 5, para. 6.

[31] *Id.*

[32] *Id.* at 6, para. 3.

or other proceeding . . . to protect the interests of the Noteholders and the Guarantor."[33]

Under the Indenture Agreements, the Noteholders have a right to institute judicial proceedings with respect to the Indentures, but only if each of certain conditions have been satisfied. These include: "the Guarantor has consented," the Noteholder has given BNYM prior written notice of the "Event of Default" underlying the anticipated suit, and the "Event of Default . . . occurred and [is] continuing."[34] The Indenture Agreements do not, on their face, grant the NGN Trusts or NCUA Liquidating Agent a right to compel any party to initiate judicial proceedings.

When the Notes have been satisfied, BNYM as Indenture Trustee must return the RMBS Trust certificates and any other remaining assets to the NGN Trusts.[35] The NGN Trusts, in turn, must reconvey those assets to NCUA Liquidating Agent as holder of the Owner Trust Certificates in the NGN Trusts.[36]

### 3. NGN Guaranty Agreements

Finally, NCUA Guarantor, the NGN Trusts, and BNYM entered into NGN Guaranty Agreements. Under these Agreements,

---

[33] *Id.* at 50, § 5.01(a)(i).

[34] *Id.* at 46, § 4.06(i), (ii), (vii).

[35] *Id.* at 38–39, § 3.01(a), (c).

[36] Trust Agreement at 24–25, § 8.01(a), (c).

NCUA "absolutely . . . guarantee[d]" the timely payment of the principal and interest due on the Notes administered by the Indenture Trustee, BNYM.[37]

### D. NCUA Guarantor Assigns Claims to NCUA Liquidating Agent and Makes Demand on BNYM

In January 2015, NCUA Guarantor and NCUA Liquidating Agent entered into an agreement in which NCUA Guarantor consented to NCUA Liquidating Agent pursuing RMBS Trust certificate-related claims ("Claims").[38] NCUA Guarantor also assigned to NCUA Liquidating Agent "any rights, under law, contract, or equity, that it may now or in the future have in connection with the Claims and related litigation."[39]

That same day, NCUA Guarantor issued a direction letter to BNYM, directing the Indenture Trustee to "take action to assert" claims against the trustees of the RMBS Trusts.[40] NCUA Guarantor also notified BNYM in writing that NCUA Liquidating Agent would

---

[37] SAC, Ex. D at 2, § 1(a), *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, No. 1:14-cv-9928 (S.D.N.Y. July 17, 2015), ECF No. 92-4.

[38] SAC, Ex. H at 1, *id.,* ECF No. 92-8.

[39] *Id.*

[40] SAC, Ex. F at 2, *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, No. 1:14-cv-9928 (S.D.N.Y. July 17, 2015), ECF No. 92-6; *see also id.* at 1–2.

15

assert and prosecute those claims on behalf of the NGN Trusts if BNYM would not do so itself.[41]

In February 2015, BNYM responded to the direction letter, stating that it did "not intend to pursue the claims," but that NCUA Guarantor had a right to pursue the claims itself.[42] BNYM later submitted a declaration stating that it "takes a neutral position with respect to any challenge to NCUA's standing" to assert the claims.[43]

### E. Procedural History

In December 2014, NCUA Liquidating Agent initiated this action against Defendants. A First Amended Complaint was filed in February 2015.

NCUA Liquidating Agent's claims stem from Defendants' service as trustees for the ninety-eight RMBS Trusts in which the CCUs held certificates.[44] NCUA Liquidating Agent alleged that, as

---

[41] *Id.* at 2.

[42] SAC, Ex. G, *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, No. 1:14-cv-9928 (S.D.N.Y. July 17, 2015), ECF No. 92-7.

[43] SAC, Ex. I at 1, para. 5, *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, No. 1:14-cv-9928 (S.D.N.Y. July 17, 2015), ECF No. 92-9. Although the declaration does not expressly distinguish between NCUA's two capacities or entities, it does define "NCUA" as "the National Credit Union Administration Board." *Id.* at 1, para. 3.

[44] According to the Second Amended Complaint, U.S. Bank currently serves as trustee for all ninety-eight trusts. Second Amended Complaint at 1 n.1. U.S. Bank was originally the trustee for forty-seven of the trusts; it became a

trustees, Defendants had contractual, common law, and statutory duties to address and correct problems with the underlying mortgage loans, and to protect the RMBS Trusts' and certificateholders' interests. According to NCUA Liquidating Agent, Defendants breached their duties by, among other things, failing to take full possession of the original notes and mortgages, failing to review mortgage loan files for irregularities, and failing to take steps to hold parties accountable for the repurchase or substitution of defective mortgage loans. At oral argument, counsel for NCUA Liquidating Agent stated that it believes Defendants' failures caused "hundreds of millions of dollars" in losses to the RMBS Trusts and certificateholders.

### 1. The District Court dismisses First Amended Complaint

On May 18, 2015, the District Court dismissed in part NCUA Liquidating Agent's First Amended Complaint for lack of standing. In its Opinion and Order, the District Court found that NCUA Liquidating Agent had failed to plead adequate facts establishing that it had either direct or derivative standing to assert claims that Defendants violated their obligations as trustees of the RMBS Trusts. The District Court also identified what it believed to be the "core standing issue": "whether and to what extent NCUA's broad powers

---

successor trustee for the other fifty-one trusts through acquisition of other trustees and appointment. *Id.* Bank of America served as trustee for some of the trusts between approximately October 2007 and December 2010. *Id.*

as conservator or liquidating agent of the CCUs survived *after* NCUA placed the CCUs' assets . . . into new, independent trusts."[45]

The District Court cautioned NCUA Liquidating Agent that it would have only "a single opportunity to replead,"[46] and instructed that the Indenture Agreements "should be included as part of any proposed amendment."[47]

2. The District Court dismisses Second Amended Complaint

NCUA Liquidating Agent used its Second Amended Complaint to allege derivative claims based on 137 certificates in eighty-nine RMBS Trusts and direct claims based on nine certificates in nine RMBS Trusts. NCUA Liquidating Agent based its derivative standing on the assignment of rights from NCUA Guarantor to NCUA Liquidating Agent, the direction letter NCUA Guarantor sent to BNYM, BNYM's refusal to bring the claims itself, and BNYM's decision not to object to a suit brought on its behalf.

The District Court again dismissed the derivative claims for two principal reasons. First, NCUA Liquidating Agent did not stand "in direct line to assert a derivative claim" because the NGN Trusts

---

[45] May 2015 Order at 8 (emphasis in original).

[46] *Id.* at 3.

[47] *Id.* at 7 n.2.

18

had themselves conveyed the claims to BNYM.[48] NCUA Liquidating Agent, in other words, was "twice removed" from the claims.[49] Second, the Indenture Agreements' Granting Clause "effected a complete transfer of all rights including *explicitly* the right to sue," which precluded the NGN Trusts, as transferor, from bringing any derivative claims.[50] Because NCUA Liquidating Agent was one step further removed from the claims than the NGN Trusts, NCUA Liquidating Agent likewise could not bring any derivative claims.

3.   The District Court denies NCUA's motion to supplement the Second Amended Complaint

Following the District Court's dismissal in part of the Second Amended Complaint for lack of derivative standing, NCUA Liquidating Agent attempted yet again to remedy its standing defects, this time "through a two-prong maneuver."[51] First, NCUA Liquidating Agent moved to supplement its Second Amended Complaint under Federal Rule of Civil Procedure 15(d) to add new allegations regarding the December 2015 "winding up" of one NGN Trust and the April 2016 appointment of Graeme W. Bush as a

---

[48] Opinion & Order at 20, *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, No. 1:14-cv-9928 (S.D.N.Y. Feb. 25, 2016), ECF No. 120 ("February 2016 Order") (emphasis in original).

[49] *Id.* at 20.

[50] *Id.* at 22 (emphasis in original).

[51] Memorandum Decision & Order at 2, *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, No. 1:14-cv-9928 (May 11, 2016), ECF No. 141 ("May 2016 Order").

"Separate Trustee." Second, NCUA Liquidating Agent sought to substitute Bush as the real party in interest under Federal Rule of Civil Procedure 17(a)(3).

In May 2016, the District Court denied NCUA Liquidating Agent's motion, "principally on the basis that any amendment of the pleadings is untimely."[52] The District Court stated that it had already "entertained several complaints," having "made it perfectly clear a year ago that [NCUA Liquidating Agent's] assertions of derivative standing were legally infirm and [having] allowed one final amendment to address the deficiencies."[53] The District Court also faulted NCUA Liquidating Agent for not invoking Rule 17 before it dismissed the derivative claims, and for "[sitting] silently" instead of notifying it of the unwinding of one NGN Trust.[54] Finally, the District Court found that an amendment to the pleadings would be futile because NCUA Liquidating Agent lacked Article III standing at the time it first brought the action.[55]

NCUA Liquidating Agent thereafter voluntarily dismissed the remaining direct claims with prejudice. This appeal followed.

---

[52] *Id.*

[53] *Id.* at 2–3.

[54] *See id.* at 3–5.

[55] *See id.* at 5–6.

## II. DISCUSSION

We consider, first, whether NCUA Liquidating Agent has derivative standing to bring claims on behalf of the NGN Trusts or BNYM as Indenture Trustee. We conclude that it does not. Second, we address whether the District Court abused its discretion when it denied NCUA Liquidating Agent's motion to supplement the Second Amended Complaint. We hold that the District Court did not abuse its discretion. Accordingly, we affirm the judgment of the District Court.

### A. Whether NCUA Liquidating Agent Has Derivative Standing

NCUA Liquidating Agent seeks to recover losses that Defendants allegedly caused when they breached their duties as trustees of the RMBS Trusts. NCUA Liquidating Agent brought these claims derivatively on behalf of the nominal defendants, the NGN Trusts. On appeal, NCUA Liquidating Agent argues that the District Court erred when it dismissed the derivative claims for lack of standing. We disagree. Under the clear and unambiguous language of the Trust and Indenture Agreements,[56] NCUA Liquidating Agent

---

[56] The Trust and Indenture Agreements are governed by Delaware and New York law, respectively. Under the law of both jurisdictions, "[w]hen the contract is clear and unambiguous, we [must] give effect to the plain-meaning of the contract's terms and provisions." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159–60 (Del. 2010); *see also Vintage, LLC v. Laws Constr. Corp.*, 13 N.Y.3d 847, 849 (2009) ("Where an agreement is unambiguous on its face, it must be enforced in accordance with the plain meaning of its terms.").

lacks derivative standing to sue on behalf of either the NGN Trusts or BNYM.

### 1. Standard of review

We review *de novo* the District Court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6).[57] We "accept[ ] as true the factual allegations of the complaint and draw[ ] inferences based upon these allegations in the light most favorable to the plaintiffs."[58] To survive a motion to dismiss, the complaint must "contain[ ]

---

[57] The District Court appeared, at certain points, to view its dismissal of the derivative claims as grounded in a lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See* February 2016 Order at 14–15; May 2016 Order at 5–6. But unlike Article III standing, derivative standing does not necessarily present a jurisdictional issue. *See In re Facebook, Inc. Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 156–58 (2d Cir. 2015); *cf. Strougo v. Bassini*, 282 F.3d 162, 167–68 (2d Cir. 2002) (treating "issue of 'shareholder standing'— whether the plaintiff may bring direct claims against the defendants" as a Rule 12(b)(6) question). We adhere to that view here, treating the District Court's dismissal for lack of derivative standing as premised on Rule 12(b)(6). *Cf. Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018) (stating that Fourth Amendment standing "should not be confused with Article III standing, which is jurisdictional and must be assessed before reaching the merits"); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (emphasizing that "'prudential' branch of standing . . . [is] not derived from Article III").

[58] *Kaliski v. Bacot* (*In re Bank of N.Y. Derivative Litig.*), 320 F.3d 291, 297 (2d Cir. 2003) (internal quotation marks and alterations omitted).

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[59]

> 2. Whether NCUA Liquidating Agent has derivative standing to sue on behalf of the NGN Trusts

NCUA Liquidating Agent lacks derivative standing to bring claims on behalf of the NGN Trusts for the simple reason that the NGN Trusts themselves do not have claims to bring. To the contrary, the NGN Trusts conveyed the RMBS Trust certificates—and any claims based on those certificates—in their entirety to the Indenture Trustee, BNYM. We reach this conclusion by following the transfer of the RMBS Trust certificates from the CCUs to NCUA Liquidating Agent, to the NGN Trusts, and finally to BNYM.

We begin with NCUA Liquidating Agent's succession to the CCUs' claims. When NCUA Liquidating Agent liquidated the five CCUs, it "succeed[ed] to . . . all rights, titles, powers, and privileges"[60] that the CCUs had as certificateholders in the RMBS Trusts. Those rights included any claims that the CCUs might have had against the trustees of the RMBS Trusts, who are the Defendants here.

But NCUA Liquidating Agent did not retain the RMBS Trust certificates, in which the claims inhered. Instead, it entered into the

---

[59] *Irrera v. Humphreys*, 859 F.3d 196, 198 (2d Cir. 2017) (internal quotation marks and alterations omitted).

[60] 12 U.S.C. § 1787(b)(2)(A)(i).

Trust Agreements, in which it agreed to "contribute, transfer, convey and assign to, and deposit with, the [NGN] Trust[s], without recourse, *all* of [NCUA Liquidating Agent's] right, title and interest in and to" the Trust Estate, including the RMBS Trust certificates.[61] And the Trust Agreements expressly stated that that conveyance was "*absolute . . .* other than for federal, state and local income and franchise tax purposes."[62]

The NGN Trusts then conveyed their interests in the RMBS Trust certificates to BNYM in the Indenture Agreements. That too was a complete transfer: the NGN Trusts granted to BNYM "*all* of [their] right, title and interest in and to" the Trust Estate, including "*all present and future claims*, demands, causes and choses in action in respect of" assets in the Trust Estate.[63]

BNYM did not further convey the Trust Estate, which includes the RMBS Trust certificates. BNYM therefore currently holds the RMBS Trust certificates and any claims based on those certificates. And BNYM will continue to hold the claims until the Indenture Notes are satisfied and the NGN Trusts dissolve.[64] Because BNYM—not the

---

[61] Trust Agreement at 8, § 3.01 (emphasis added).

[62] *Id.* at 6, § 2.14(b) (emphasis added).

[63] Indenture Agreement at 5, para. 6 (emphasis added).

[64] At least one NGN Trust has been dissolved during the litigation, and the claims held by that trust have been reconveyed to the NCUA Board. **[Blue Br. at 3]** The implications of the dissolution of that NGN Trust are discussed below.

NGN Trusts—currently possesses the claims, NCUA Liquidating Agent cannot bring the claims derivatively on behalf of the NGN Trusts.

NCUA Liquidating Agent's invocations of the Delaware Statutory Trust Act ("DSTA") do not disturb this conclusion. It argues that the DSTA authorizes trust beneficiaries to bring derivative actions on behalf of the trust,[65] that it satisfied Delaware's demand requirements,[66] and that the DSTA retains the historical distinction between legal and equitable title in trust property,[67] all with the result that NCUA Liquidating Agent, as beneficiary of the NGN Trusts, is entitled to sue to enforce the trusts. These assertions of Delaware law may all be correct, but they are beside the point. Because the NGN Trusts *themselves* do not hold the claims, whether Delaware law permits NCUA Liquidating Agent to bring derivative claims on their behalf is irrelevant.

3. Whether NCUA Liquidating Agent has standing to bring claims on behalf of BNYM

If NCUA Liquidating Agent, then, cannot bring the claims on behalf of the NGN Trusts, can it bring the claims on behalf of the

---

[65] *See* Appellants' Opening Br. 23–24.

[66] *See id.* at 24–26.

[67] *See id.* at 29–32.

Indenture Trustee, BNYM? The Indenture Agreements are unambiguous; it cannot.

As Indenture Trustee, BNYM holds the Trust Estate, including the claims, "in trust for the *exclusive use and benefit* of all present and future Noteholders and the Guarantor."[68] Reflecting that beneficiary status, the Indenture Agreements authorize BNYM "to institute, appear in or defend any suit or other proceeding . . . to protect the interests of *the Noteholders and the Guarantor*."[69] And in the event that BNYM fails to adequately protect the Noteholders' interests, the Agreements provide the Noteholders with a limited right to institute judicial proceedings themselves.[70]

But the Indenture Agreements do *not* authorize the NGN Trusts or NCUA Liquidating Agent to institute judicial proceedings. The NGN Trusts and NCUA Liquidating Agent are not beneficiaries under the Indenture Agreements. Only the Noteholders and NCUA Guarantor are beneficiaries, and thus only they might—if they complied with the requirements in the Indenture Agreements— exercise any control over judicial proceedings.

---

[68] Indenture Agreement at 6, para. 3 (emphasis added); *see also id.* at 5, para. 6 (granting the NGN Trusts' "right, title and interest in and to" the Trust Estate "to the Indenture Trustee, for the benefit of the Holders of the Notes and the Guarantor").

[69] *Id.* at 50, § 5.01(a)(i).

[70] *See id.* at 46–47, § 4.06; *id.* at 48, § 4.11.

Nor would it be appropriate for us to read into the Indenture Agreements a right of the NGN Trusts or NCUA Liquidating Agent to institute judicial proceedings. Applying "the standard canon of contract construction expressio unius est exclusio alterius,"[71] we presume that the express grant of the right to institute proceedings to the Noteholders entails the denial of such a right to others, including the NGN Trusts and NCUA Liquidating Agent.[72] Adopting any other reading would contravene the intent of the parties. That intent plainly was to identify and circumscribe the circumstances under which a beneficiary could compel BNYM to institute judicial proceedings.

The question then becomes whether NCUA Guarantor, as a beneficiary under the Indenture Agreements, can compel BNYM to institute proceedings. Notably, NCUA Liquidating Agent does not argue that the Indenture Agreements authorize NCUA Guarantor to institute proceedings. This is for good reason. NCUA Liquidating Agent does not identify, and we do not find, any provision of the Indenture Agreements authorizing the Guarantor to initiate—or

---

[71] *Croteau v. A.C. & S.* (*In re N.Y. City Asbestos Litig.*), 41 A.D.3d 299, 302 (N.Y. 1st Dep't 2007); *see also Two Guys from Harrison-N.Y., Inc. v. S.F.R. Realty Assocs.*, 63 N.Y.2d 396, 404 (1984).

[72] *See Novak & Co. v. Travelers Indem. Co.*, 56 A.D.2d 418, 428 (N.Y. 2d Dep't 1977) ("Plaintiff is not among the classes listed as having a direct right of action against the surety under the payment bond. Hence its claim to have a right of action, if one exists . . . , can flow only from the performance bond and can find no basis in the language of the payment bond.").

compel BNYM to initiate—judicial proceedings under the facts alleged in the Second Amended Complaint.

NCUA Liquidating Agent makes several attempts to create a beneficial interest for itself under the Indenture Agreements, but these all miss the mark. First, NCUA Liquidating Agent makes much of a clause in the "Tax Administration" section providing "that, for federal, state and local income and franchise tax purposes . . . the Certificates [held by NCUA] be treated as beneficial ownership interests in the Trust Estate."[73] But as the qualification "for federal, state and local income and franchise tax purposes" makes clear, this provision concerns only the desired allocation of tax liability on the Trust Estate. It does not, by its plain terms, create a beneficial interest for any other purposes.

NCUA also invokes the Delaware Statutory Trust Act's codification of "the longstanding historical distinction between legal title and equitable title, recognizing that a trustee does not act on its own behalf but rather on behalf of trust beneficiaries."[74] Delaware law, however, does not govern the Indenture Agreements; New York law does. And New York law requires that we give effect to the plain meaning of the Indenture Agreements' unambiguous terms.[75] We

---

[73] Indenture Agreement at 71, § 6.07(b).

[74] Appellants' Opening Br. 27.

[75] *See Vintage, LLC v. Laws Constr. Corp.*, 13 N.Y.3d 847, 849 (2009) ("Where an agreement is unambiguous on its face, it must be enforced in accordance with the plain meaning of its terms.").

must therefore enforce the provisions of the Indenture Agreements requiring that the Indenture Trustee hold the Trust Estate for the exclusive benefit of the Noteholders and Guarantor, not the NGN Trusts or NCUA Liquidating Agent.

NCUA alternatively argues that we should read the Indenture and Trust Agreements as a single contract because they were executed at the same time and are related to the same subject-matter.[76] Application of this canon of contract construction does not change our conclusion. The unambiguous terms in the individual Agreements remain unambiguous when they are read together.

Finally, NCUA contends that Defendants themselves lack standing to challenge actions BNYM took as Indenture Trustee because "a trustee's actions may not be challenged by non-beneficiaries."[77] But Defendants are not challenging actions taken by BNYM as trustee. They are simply relying on the Trust and Indenture Agreements to demonstrate that NCUA Liquidating Agent and the NGN Trusts assigned their claims to BNYM.

In short, the District Court correctly held that NCUA Liquidating Agent lacks derivative standing to bring claims based on the RMBS Trust certificates on behalf of the NGN Trusts or BNYM.

---

[76] For this canon of construction see *Nau v. Vulcan Rail & Construction Co.*, 286 N.Y. 188, 197 (1941) (citing, *inter alia*, *Restatement of Contracts* § 235(c) (Am. Law Inst. 1932)).

[77] Appellants' Opening Br. 39.

## B. Denial of Motion for Leave to Supplement the Second Amended Complaint

Following the District Court's dismissal in part of the Second Amended Complaint for lack of derivative standing, NCUA[78] moved for leave to (1) supplement its complaint to add new allegations under Federal Rule of Civil Procedure 15(d), and (2) substitute a newly appointed Separate Trustee, Graeme W. Bush, as plaintiff under Federal Rule of Civil Procedure 17(a)(3). The District Court denied the motion "principally on the basis that any amendment of the pleadings is untimely under Rule 15."[79] On appeal, NCUA argues that this denial constituted reversible error. We disagree.

### 1. Standard of review

We review the District Court's denial of a motion under Rules 15 and 17(a)(3) for "abuse of discretion."[80] Under this deferential standard, we will reverse a district court only "if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of

---

[78] Because the distinction between NCUA's various capacities is not central to issues discussed in this section, we hereafter refer simply to "NCUA."

[79] May 2016 Order at 2.

[80] *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (Rule 15); *Commonwealth of Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 814 F.3d 641, 643 (2d Cir. 2016) (Rule 17(a)).

the evidence, or rendered a decision that cannot be located within the range of permissible decisions."[81]

Rule 15(d) provides in part: "On motion and reasonable notice, the court *may*, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."[82] Although language of Rule 15(d) is plainly permissive, we have held that "[a]bsent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility, [a Rule 15(d)] motion should be freely granted."[83]

Rule 17(a)(3) provides that a "court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." A district court may deny a Rule 17(a) motion as untimely if it is not filed "within a 'reasonable time' after a standing objection is raised."[84]

---

[81] *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (internal quotation marks and citations omitted).

[82] Fed. R. Civ. P. 15(d) (emphasis added).

[83] *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995).

[84] *Commonwealth of Pa. Pub. Sch. Emps.' Ret. Sys.*, 814 F.3d at 643.

2. Whether the District Court abused its discretion

Whether a district court "abused its discretion" is a case-specific and often fact-intensive inquiry.[85] We must therefore examine the District Court's denial of leave to supplement NCUA's Second Amended Complaint in light of the facts of the case, including the events preceding the denial decision. Upon such review, we conclude that the District Court acted within its discretion.[86]

In May 2015, the District Court dismissed the derivative claims in NCUA's First Amended Complaint. In its well-reasoned Opinion and Order, the District Court aptly identified the "core standing issue": "whether and to what extent NCUA's broad powers as conservator or liquidating agent of the CCUs survived *after* NCUA placed the CCUs' assets . . . into new, independent trusts."[87] Finding that NCUA had failed to plead facts establishing that "it specifically retained . . . the right to assert claims on behalf of [the NGN Trusts]," the District Court advised it that "[i]f such facts exist, they should be

---

[85] *Cf. Jones v. Murphy*, 694 F.3d 225, 241 (2d Cir. 2012).

[86] We note that our conclusion in this respect does not mean that a district court's *grant* of leave to supplement in a similar situation would be an abuse of discretion. *See generally BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, Nos. 14 Civ. 9371 (KPF) (SN), 14 Civ. 9764 (KPF) (SN), 14 Civ. 10067 (KPF) (SN), 14 Civ. 10102 (KPF) (SN), 15 Civ. 10033 (KPF) (SN), 2017 WL 3610511, at *13–21 (S.D.N.Y. Aug. 21, 2017). Because this is a discretionary call, the two are not mutually exclusive.

[87] May 2015 Order at 8 (emphasis in original).

pled."[88] "In the absence of such facts," the District Court continued, "the Court is left with the fact that the NGN Trusts are Delaware statutory trusts, which are separate legal entities with their own indenture trustee."[89]

Having thus identified the relevant standing inquiry, the District Court advised NCUA that it would have only "a single opportunity to replead."[90] The District Court also observed that NCUA had "not provided the Court with copies of the NGN/BNY Indentures,"[91] and instructed that the Indenture Agreements must be included "as part of any proposed amendment."[92]

At this point, NCUA was fully apprised of the stakes involved in filing a second amended complaint. It had received "a definitive ruling" on the deficiencies of its initial theory of derivative standing,[93] and guidance on how to remedy them. It was told this would be the last chance to amend. And it knew the District Court would consider the contents of the Indenture Agreements.

---

[88] *Id.*

[89] *Id.*

[90] *Id.* at 3.

[91] *Id.* at 7 n.2.

[92] *Id.*

[93] *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).

Represented, as it was, by able counsel, NCUA also knew, or should have known, one other fact: contrary to what the District Court had reasonably assumed,[94] the NGN Trusts no longer possessed the claims. Rather, the NGN Trusts had transferred the claims to BNYM in the Indenture Agreements. To establish derivative standing, NCUA would therefore have to show not only that it specifically retained the right to assert the claims that it transferred *to the NGN Trusts*, but also that it specifically retained the right to assert the claims that the NGN Trusts subsequently transferred *to BNYM*. In other words, the disclosure of the Indenture Agreements would make it even more difficult for NCUA to establish derivative standing.

NCUA nevertheless decided to use its final amendment to double down on its already-dismissed theory of standing. It must now live with the consequences of that decision. When a plaintiff was aware "of the deficiencies in his complaint when he first amended," he "clearly has no right to a second amendment [even if] the proposed second amended complaint in fact cures the defects of the first."[95]

---

[94] *See* May 2015 Order at 11 ("[I]t appears that the buck stops with the NGN Trusts."); *see also id.* at 7–13.

[95] *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (Friendly, J.); *cf. Loos v. Immersion Corp.*, 762 F.3d 880, 890–91 (9th Cir. 2014) ("Because Plaintiff essentially re-pled the same facts and legal theories in his amended complaint, the district court did not abuse its discretion in dismissing Plaintiff's claims with prejudice." (internal quotation marks omitted)).

Simply put, "a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim."[96]

We are not persuaded by NCUA's arguments to the contrary. First, NCUA identifies a possible legal error in one of the District Court's proffered rationales for denying the motion. Specifically, NCUA contends that the District Court erroneously conflated Article III standing with derivative standing.[97] That conflation, it argues, led the District Court to incorrectly conclude that it lacked subject matter jurisdiction and colored its entire analysis of the merits of the motion.

Although we agree that the District Court committed the asserted legal error, NCUA overstates its effect on the decision to deny NCUA's request to again amend the complaint. When a district court offers several alternative and independent rationales for denying a motion for leave to supplement, it does not abuse its discretion just because one of its independent reasons for denying the motion is flawed.[98] Here, the alternative rationales independently support the District Court's decision denying leave to supplement, and we see no indication that the court's error in regard to Article III standing infected other aspects of its analysis. Accordingly, we

---

[96] *State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) (internal quotation marks and alteration omitted).

[97] *See In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 156–57 (2d Cir. 2015) (distinguishing Article III and derivative standing).

[98] The District Court emphasized that this final rationale, with which NCUA takes issue, was an alternative rationale by beginning the paragraph, "In addition, another problem . . . ." May 2016 Order at 5.

conclude that the District Court's articulation of an alternative, independent, and purportedly erroneous rationale for denying the motion to supplement did not constitute an abuse of discretion in its decision to deny NCUA's request to file yet another amended complaint.

NCUA next argues that the District Court abused its discretion because it did not provide a definitive ruling on the derivative standing theory before warning NCUA that it had only one final opportunity to replead. This misrepresents the District Court's Opinion and Order dismissing in part the First Amended Complaint. In that Opinion and Order, the District Court, with the benefit of full briefing from both sides, identified the precise defects in NCUA's pleadings and "made it perfectly clear . . . that [NCUA's] assertions of derivative standing were legally infirm."[99] This stands in stark contrast to our decision in *Loreley*, on which NCUA relies so heavily, where a district court merely identified pleading defects in remarks made in a conference held before defendants had even filed a motion to dismiss.[100]

Nor did NCUA face a true "Hobson's choice" between abandoning the derivative standing theory and requesting BNYM appoint a separate trustee. NCUA could have proceeded under both theories by simply alleging that the separate trustee was willing to

---

[99] *Id.* at 3.

[100] *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).

acquiesce in NCUA's suit. If the District Court had concluded that the separate trustee had direct standing *and* NCUA had derivative standing, NCUA could have done then what it says it would do on remand here: "request that BNYM undo the Separate Trustee Agreement so NCUA may proceed derivatively."[101] At worst, the District Court might have found that the appointment of the separate trustee defeated NCUA's derivative standing, and required the separate trustee to litigate the claims. In that hypothetical scenario, NCUA would have achieved what it sought to do by supplementing its Second Amended Complaint.

NCUA's reliance on Rule 17 fares no better. NCUA waited over a year after Defendants challenged its standing to appoint the Separate Trustee. This was not a "reasonable time after [the] standing objection [was] raised."[102]

Finally, NCUA claims that the District Court's October 2015 order advising that it would accept "no more paper on this motion [to dismiss] from either party"[103] precluded it from alerting the court to new factual developments. This excuse rings hollow. The order—handwritten on Defendants' motion for leave to file a sur-rebuttal to NCUA's sur-reply—referred by its plain terms only to further

---

[101] Appellants' Opening Br. 49 n.17.

[102] *Commonwealth of Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 814 F.3d 641, 643 (2d Cir. 2016) (internal quotation marks omitted).

[103] Order, *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, No. 1:14-cv-9928- (S.D.N.Y. Oct. 28, 2015), ECF No. 116.

briefing on that motion. Indeed, that is how NCUA interpreted the order at the time: on February 10, 2016, after the "no more paper" order was issued, NCUA filed a supplemental authority letter.

In sum, we conclude that the District Court did not abuse its discretion when it denied NCUA's motion for leave to supplement its Second Amended Complaint.

## III. CONCLUSION

To summarize, we hold as follows:

(1) NCUA Liquidating Agent lacks derivative standing to bring the claims in the Second Amended Complaint on behalf of the NGN Trusts or BNYM as Indenture Trustee; and

(2) The District Court did not abuse its discretion when it denied NCUA's motion for leave to supplement its Second Amended Complaint.

For the foregoing reasons, we **AFFIRM** the District Court's judgment.