REED SMITH LLP, Plaintiff,

against
LEED HR, LLC, BIG RED INVESTMENTS PARTNERSHIP, LTD, GENESIS MERCHANT PARTNERS GP LLC, UPLIFT CAPITAL LLC, CONTINENTAL STOCK TRANSFER & TRUST COMPANY, INC. 


Index No. 654213/2012

For Intervenors, Law Office of Wallace Neel, P.C., 43 West 43rd Street, Suite 65 New York, NY 10036, 646-524-6502 For Defendants, Law Offices of Michael R. Horenstein, 437 East 80th Street, ste 27, New York, New York 10075, 212-517-7340; Abell Rose LLC, 108 S. Madison Ave., Louisville, KY 40243, 502-450-5611


Andrew Borrok, J.

The following e-filed documents, listed by NYSCEF document number (Motion 012) 332, 333, 334, 335, 336, 337, 338, 339, 340, 341, 342, 343, 344, 345, 346, 347, 348, 349, 350, 351, 354, 355, 356, 357, 358, 359, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 370, 371, 372, 373, 374, 375, 376, 377, 378, 379, 380, 381, 382 were read on this motion to/for SUMMARY JUDGMENT (AFTER JOINDER)
Upon the foregoing documents, LEED HR, LLC's (LEED) motion for summary judgment pursuant to CPLR § 3212 is granted solely to the extent that (i) the breach of fiduciary duty (fourth) cause of action and (ii) the conspiracy to breach a fiduciary duty (sixth) cause of action are dismissed, and is otherwise denied.
The Relevant Facts and Circumstances
This lawsuit concerns certain shares that were attached as a result of a $58 million fraud masterminded by Wilbur Anthony Huff in which he allegedly directed other co-conspirators to divert money from O2HR, LLC (O2HR), a company that provided outsourced management of payroll, tax, and insurance obligations for client companies (NYSCEF Doc. No. 113, ¶ 6). In 2012, Mr. Huff was indicted by the United States Attorney for the Southern District of New [*2]York, pled guilty in December 2014, and was sentenced to 12 years in prison (id.). 
The gravamen of the Answer with Cross-Claims (hereinafter defined) is that O2HR was rendered insolvent as a result of Mr. Huff and the defendants' fraud and that, as a result, O2HR has now defaulted on certain promissory notes (id., ¶¶ 26-35). To wit, the Answer with Cross-Claims alleges that in 2008 and 2009, O2HR issued five promissory notes (collectively, the Notes) in favor of Sands Brothers Venture Capital II, LLC, Sands Brothers Venture Capital III, LLC, Sands Brothers Venture Capital IV, LLC, and Genesis Merchant Partners LP (collectively, the Intervenors) (id., ¶¶ 33-37). And, the value in O2HR was allegedly fraudulently transferred to entities controlled by Mr. Huff, including River Falls Investments, LLC, River Falls Financial Services, LLC, River Falls Holdings, LLC (River Falls Investments, LLC, River Falls Financial Services, LLC, and River Falls Holdings, LLC, collectively, the River Falls Entities), and SDH Realty LLC, among others (collectively, the Huff-Controlled Entities) (id., ¶¶ 40-45). The Intervenors also allege that Mr. Huff directed and controlled O2HR through its CEO, Thomas Bean, to fraudulently convey O2HR assets so as to divert money from its creditors (id., ¶ 9).
A. LEED's Alleged Involvement
LEED is a Kentucky limited liability company formed on June 6, 2012 and Michael Schroering is its sole manager (NYSCEF Doc. No. 344). In sum and substance, the Intervenors' allege that through a number of deceptively crafted steps, Mr. Huff diverted O2HR assets through companies owned by Mr. Bean, which were then converted into certain shares that were passed through entities owned by Mr. Huff's family, and ultimately deposited with LEED (NYSCEF Doc. No. 113, ¶ 98). In other words, the Intervenors allege that LEED is Mr. Huff's "special purpose vehicle" to hold his fraudulent transfers (id., ¶ 120).
More precisely, the Intervenors allege that Mr. Bean, through his wholly owned company WTS Acquisition Corp. (WTS) and RFFG, LLC, obtained undocumented no-interest loans from Huff-Controlled Entities to acquire select assets of On-Site Services, Inc. (On-Site), RFFG of Cleveland, LLC (RFFG), and DCMM Staffing, LLC (DCMM) in 2009 (NYSCEF Doc. No. 367). 
Mr. Bean then, through WTS, allegedly swapped assets in the aforementioned entities for shares of GEE Group, Inc., f/k/a General Employment Enterprises, Inc. (GEE) when GEE purchased On-Site, RFFG, and DCMM in 2010 (NYSCEF Doc. No. 113, ¶¶ 61-72). On or around June 1, 2010, Mr. Bean, through WTS, allegedly swapped assets and/or ownership interests of On-Site for 1,476,015 shares of GEE stock, which shares were delivered for no consideration to Big Red Investments Partnership, Ltd. (Big Red), a company owned by Mr. Bean (id., ¶¶ 61-67; NYSCEF Doc. No. 368). On or around November 1, 2010, Mr. Bean, through WTS, allegedly traded assets of DMCC and RFFG for 5,581,395 shares of GEE stock, of which 3,500,000 GEE shares were placed into RFFG, LLC and 2,081,395 GEE shares were placed into Big Red (NYSCEF Doc. No. 113, ¶¶ 68-71).
The Intervenors also allege that Mr. Huff also attempted to divert GEE shares through his daughter, Tiffany Huff Simmons, and son-in law, Brandon Simmons (collectively, the [*3]Simmons) (id., ¶ 73). On or around September 8, 2011, RFFG, LLC was purchased by Trinity HR LLC, an entity whose members were the Simmons (id.). A partially paid promissory note was allegedly part of the consideration provided by Trinity HR LLC to RFFG LLC (id., ¶ 74). On or around December 21, 2011, RFFG LLC allegedly distributed the 3,500,000 GEE shares to Trinity HR LLC for no consideration (id., ¶¶ 76-77).
The Intervenors also allege that the Simmons acquired further GEE shares from Huff-Controlled Entity, PSQ, LLC (PSQ), in a number of transactions between 2009 to 2011. PSQ was initially wholly owned by Stephen Pence and Mr. Huff allegedly diverted approximately $1,900,000 from O2HR to enable PSQ to purchase 9,737,415 GEE shares in 2009 (id., ¶¶ 82-84). PSQ was then sold to Gregory Skaggs, who subsequently transferred PSQ to Trinity HR Services LLC on December 12, 2011 (id., ¶ 86). On or around December 13, 2011, Trinity HR Services LLC, also owned by the Simmons, allegedly distributed to itself 9,325,281 GEE shares from PSQ (id., ¶¶ 87-90).
Next, and significantly, the Intervenors allege that GEE shares were sold by the Simmons for the purpose of being "parked" in LEED pursuant to: (i) a Stock Purchase Agreement, dated August 21, 2012, by and between LEED and Trinity HR Services, LLC, whereby Trinity HR Services LLC sold 9,325,281 GEE shares to LEED for the purchase price of $2,274,000, payable in $37,900 cash at closing, $721,000 no later than 45 days thereafter, and the balance by delivery of a promissory note, (ii) a Promissory Note, dated August 21, 2012, by and between LEED in favor of Trinity HR Services, LLC, for $1,515,100, (iii) a Stock Purchase Agreement, dated August 21, 2012, by and between LEED and Trinity HR LLC, whereby Trinity HR LLC sold 2,974,719 GEE shares to LEED for the purchase price of $726,000, payable in $12,100 cash at closing, $229,000 no later than 45 days thereafter, and the balance by delivery of a promissory note, and (iv) a Promissory Note, dated August 21, 2012, by and between LEED in favor of Trinity HR, LLC for $484,900, which altogether enabled LEED to acquire 12,300,000 GEE shares (id., ¶¶ 93-96; NYSCEF Doc. No. 380, the Trinity Transactions). The Intervenors claim that LEED either did not pay for the Trinity Transactions, or used fraudulently obtained funds from Mr. Huff or other co-conspirators to complete payment (id.).
The Intervenors further allege that the Shares (hereinafter defined) that are the subject of this action, were part of an attempted fraudulent conveyance to LEED pursuant to a Stock Purchase Agreement (NYSCEF Doc. No. 379, the Agreement), by and between LEED and Big Red, dated August 15, 2012, as amended by an Amendment to Stock Purchase Agreement (NYSCEF Doc. No. 380, the Amendment; the Agreement and Amendment, collectively the August 15 Agreement), whereby Big Red sold 3,357,410 GEE Shares to LEED (the Shares) in exchange for the purchase price of $610,000, with a mere $220,000 paid at closing and the balance due after LEED received the Shares.
The Form 13D, filed August 21, 2012 with the SEC, indicates that LEED purchased 3,357,410 shares from Big Red on August 16, 2012 for approximately $0.18 per share (NYSCEF Doc. No. 380). However, only $220,000 was allegedly paid at closing with an alleged promise to pay the remaining $390,000 balance (NYSCEF Doc. No. 113, ¶ 110).
In October and November 2012, the stock purchase transaction was not yet completed but Uplift Capital LLC and Genesis Merchant Partners LP were in discussions with LEED to enter into a transaction to split an interest in the Shares (NYSCEF Doc. No. 1, ¶ 8). The parties contemplated that the share purchase transaction could be completed pursuant to an arrangement where Reed Smith LLP (Reed Smith) would be escrow agent to facilitate the ultimate transaction between LEED, Uplift and Genesis (id.). 
By November 15, 2012, Reed Smith had received the Shares but the proposed form escrow agreements were never fully executed by the parties (id., ¶¶ 10-11). On November 28, 2012 and November 29, 2012, LEED and Big Red requested that the Shares be transmitted to LEED (id., ¶ 12). On November 29, 2012, Genesis asserted a superior interest to the certificates (id.).
B. Relevant Procedural History
On December 3, 2012, Reed Smith sought to deposit the Shares with the court by commencing this interpleader action. On February 8, 2013, LEED filed its Answer, Counterclaim and Cross-Claim (NYSCEF Doc. No. 7). On February 26, 2013, Reed Smith moved for an order to discharge its liability and authorize the deposit of stock certificates with the court (Mtn. Seq. No. 001), which motion was granted pursuant to a decision and order (Ramos J.) dated May 31, 2013 (NYSCEF Doc. Nos. 50, 55, 57).
On October 21, 2014, the Intervenors filed their Answer and Cross-Claims (NYSCEF Doc. No. 113, the Answer and Cross-Claims) asserting the following cross-claims against LEED: fraudulent conveyance (first cross-claim), aiding and abetting fraudulent conveyance (second cross-claim), conspiracy to commit fraudulent conveyance (third cross-claim), breach of fiduciary duty (fourth cross-claim), aiding and abetting breach of fiduciary duty (fifth cross-claim), conspiracy to breach fiduciary duty (sixth cross-claim), constructive trust (seventh cross-claim), rescission (eighth cross-claim), equitable restitution (ninth cross-claim), unjust enrichment (tenth cross-claim), and a declaratory judgment that they own the Shares (eleventh cross-claim).
The Intervenors also filed a separate action against Mr. Huff and his co-conspirators captioned, Sands Brothers Venture Capital II, LLC et al. v W. Anthony Huff et al. (Index No. 654168/2012, the Huff Action). Pursuant to an order in the Huff Action, dated January 7, 2015, the Huff Action was consolidated with this action (see Mtn. Seq. No. 003 in the Huff Action). LEED subsequently filed a motion to dismiss in the Huff Action (see Mtn. Seq. 006 in the Huff Action) and pursuant to a decision and order dated June 3, 2015, the court (Ramos J.) dismissed the Huff Action as against LEED for lack of personal jurisdiction.
On January 12, 2016, the Intervenors filed a motion to attach the Shares (Mtn. Seq. No. 008), which motion was granted on the record after oral argument (3/23/2016 Tr., NYSCEF Doc. No. 208) and by order dated June 8, 2016 (NYSCEF Doc. No. 227).
LEED then moved for summary judgment dismissal for lack of personal jurisdiction, among other grounds (see Mtn. Seq. 006), which motion was denied by the court (Ramos J.) on the [*4]record following oral argument because "Leed cannot bring the stock into the state and say, well, we weren't subject to New York laws and New York jurisdiction" (7/14/2016 Tr., NYSCEF Doc. No. 245, at 21:6-15).
C. The Relevant Evidence
1. Michael Schroering, Manager of LEED
As set forth above, Michael Schroering is the manager and sole member of LEED. During his deposition on October 20, 2017 (NYSCEF Doc. No. 378), Mr. Schroering testified that the August 15 Agreement was amended to allow for payment of the purchase price of $220,000 at closing because the parties did not have an escrow agent and his attorney wanted to ensure that the shares were not encumbered (id. at 116-117). Mr. Schroering stated that no security was given to Big Red for the remainder of the purchase price (id. at 118:9-11). Mr. Schroering also explained that he borrowed $150,000 from Michael Boone, pursuant to a note, dated August 8, 2012, which was repaid within its maturity of 90 days (id. at 118:14-119:14).
With regards to the purchase of GEE shares from Trinity HR Services LLC, Mr. Schroering testified that he paid approximately $200,000 cash to Trinity HR Services LLC (id. at 49:21-50:1). In terms of the remaining note for $1,515,100 million, Mr. Schroering stated that this was paid after January 2014 because the shares were encumbered by some of the seller's original investors (id. at 50:16-51:19). With regards to the purchase of GEE shares from Trinity HR LLC, Mr. Schroering testified that he paid approximately $250,000 and the remaining note for $484,900 was repaid by January 21, 2014 with "250 in real estate equivalent where the note was satisfied as to the Trinity HR note," but that he did not possess a note marked paid for the transaction (id. at 49:21-50:12, 61:21-62:19).
By affidavit, sworn to on October 24, 2019 (NYSCEF Doc. No. 345), Mr. Schroering attests that the purchase of the Shares from Big Red was made between himself, in Kentucky, and Mr. Bean, who was in Florida (id., ¶ 3). Mr. Schroering asserts that LEED paid Big Red $220,000 for the Shares with money from his personal account and a loan from Michael Boone (id., ¶ 3). Mr. Schroering states that he met Mr. Huff and Mr. Bean after November 1, 2011 (id., ¶ 4). He explains that he did not know about O2HR or its alleged chain of fraud when LEED bought the Shares in August 2012, and that he was shocked upon learning about Mr. Huff's indictment in October 2012 (id.). Mr. Schroering also asserts that he did not meet Mr. Pence before 2017 and has never had dealings with Mr. Pence (id., ¶ 5).
2. Jeff Johnson, Intervenors' Expert
The Intervenors' expert, Jeff Johnson, Charted Financial Analyst, was deposed on August 13, 2019 (NYSCEF Doc. No. 359). Mr. Johnson testified that he could not trace any funds to LEED, Mr. Schroering, GEE stock, any person or investment vehicle that then purchased GEE stock, Mr. Bean, and Big Red (id. at 136:20-137:17). 
3. Judson B. Wagenseller, Attorney for Mr. Huff
Judson B. Wagenseller was the attorney who represented WTS and he was deposed in a companion action (Index No. 654168/2012) on August 3, 2017 (NYSCEF Doc. No. 367). Mr. Wagenseller testified that he was paid by Mr. Huff for his representation of WTS when Mr. Bean acquired On-Site, DMCC, and RFFG in 2009 and later sold these entities to GEE in 2010, and that he believed Mr. Bean funded the initial acquisitions with loans from the River Falls Entities (id. at 100:8-11, 105:18-25, 108-21, 119:2-10). 
Mr. Wagenseller testified that he represented WTS as buyer when it acquired DMCC and RFFG and that Mr. Bean funded this acquisition with $750,000 borrowed from one of the River Falls Entities, which he described as a "a pocket book controlled by Mr. Huff" (id. at 82:25-84:7). Mr. Wagenseller could not recall whether the $750,000 loan to Mr. Bean for the Ameritemps Transaction was documented via a note or otherwise, but he recalled seeing accounting for the same (id. at 119:20-120:4). Mr. Wagenseller also stated that he represented WTS as buyer when it acquired the outstanding stock of On-Site on January 1, 2009 (id. at 97:1-12, 103:8-12). Mr. Wagenseller believes that Mr. Bean paid $125,000 for On-Site and in that accounting, he recalled seeing a reference to "monies related to On-Site" (id. at 120:13-21).
Mr. Wagenseller did not know if interest was repaid on the loans from the River Falls Entities to Mr. Bean or if these loans were documented (id. at 120:22-121:6). 
Discussion
On a motion for summary judgment, the movant "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986], citing Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). Once this showing is made, the burden shifts to the opposing party to produce evidence in admissible form sufficient to establish the existence of a triable issue of fact (Zuckerman v New York, 49 NY2d 557, 562 [1980]).
A. Choice of Law
As a threshold matter, LEED argues that Kentucky law applies to the Intervenors' claims because Kentucky is the law of the state with the most significant contacts to the dispute, relying on Atsco Ltd. v Swanson, which applied Malaysian law to a claim for fraudulent conveyance brought in New York (29 AD3d 465, 465 [1st Dept 2006]). The first step in any choice of law analysis is to determine whether an actual conflict exists between the laws of the jurisdictions involved (Allstate Ins. Co. v Stolarz, 81 NY2d 219, 223 [1993]; Atsco, supra [the court first found a conflict between New York and Malaysian law for a claim of fraudulent conveyance and then considered which law applied]). 
To the extent that LEED claims that a conspiracy or aiding and abetting fraudulent conveyance claim is not recognized under Kentucky law, the cases that LEED relies on are not inconsistent with New York law as both jurisdictions do not impose liability for a claim of conspiracy or [*5]aiding and abetting a fraudulent conveyance on a non-transferee (compare GATX Corp. v Addington, 879 F Supp 2d 633, 644 [ED Ky 2012] [concluding that an aiding and abetting fraudulent conveyance claim cannot be asserted against a non-transferee]; CNH Capital Am. LLC v Hunt Tractor, Inc., 568 F Appx 461, 473 [6th Cir 2014] [claim of conspiracy to commit fraudulent conveyance failed where defendant was not the transferee or transferor], with Federal Deposit Ins. Corp. v Porco, 75 NY2d 840, 842 [1990] [NY DCL does not give rise to a claim for conspiracy or aiding and abetting fraudulent conveyance against defendants that are not transferees]).
In its moving papers, LEED does not identify any other purported conflict between Kentucky and New York law. As no conflict exists, the court will apply New York law (Wimbledon Fund, SPC (Class TT) v Weston Capital Partners Master Fund II, Ltd., 2019 NY Slip Op 30863[U], *8 [Sup Ct, NY County 2019] [choice of law analysis unnecessary where defendant failed to meet its burden of demonstrating a conflict of laws between New York and the Cayman Islands]).
B. Fraudulent Conveyance (First Cross-Claim)
LEED argues that the court should grant summary judgment to dismiss the fraudulent conveyance claim because (i) the Intervenors were not creditors of Big Red when the Shares were sold to LEED in August 2012, (ii) the Intervenors have not produced evidence in support of their allegations, and (iii) that the Intervenors adduce no evidence as to whether LEED's purchase of the Shares was for less than adequate consideration. In their opposition papers, the Intervenors argue that LEED should be liable for fraudulent conveyance as a transferee of funds from O2HR.
Even if the Intervenors were not creditors of Big Red, LEED concedes that a transferee is a proper party to a fraudulent conveyance claim. And, there remain material issues of fact concerning various steps in the allegedly fraudulent transfers.
By way of example, when Mr. Bean initially acquired On-Site, DMCC, and RFFG before these entities were sold to GEE, Mr. Wagenseller testified that one of the River Falls Entities — i.e. a Huff-Controlled Entity — provided Mr. Bean with undocumented loans to facilitate these purchases. Further, Mr. Wagenseller was not aware of details of the purported loans and whether they were repaid with interest. As a result, the ultimate source of the funds that Mr. Bean used to purchase those entities which were then later sold to GEE, and transmitted down the alleged chain of fraud, is an issue of fact that cannot be resolved on the instant motion.
The Intervenors also adduce evidence of insufficient consideration in the chain of transfers, including the 1,476,015 GEE shares received by WTS and Mr. Bean for the sale of On-Site. The SEC Form 13D indicates that these shares were subsequently transferred from WTS to Big Red, an entity wholly owned by Mr. Bean, for no consideration (NYSCEF Doc. No. 368).
There also remain material issues of fact concerning whether LEED's purchase of the Shares from Big Red was for adequate consideration. Mr. Schroering only adduces a conclusory affidavit attesting that the $220,000 down payment was used to pay for the Shares, but provides [*6]no documentary evidence to corroborate his assertion that the payment was ever actually made or that the $150,000 note provided by Mr. Boone was repaid. Further, it is undisputed that LEED did not provide any security for the remaining purchase price of the Shares as would be customary. The Intervenors also dispute whether the August 15 Agreement's purchase price of $0.18 per GEE share constituted adequate consideration. With respect to the Trinity Transactions, Mr. Schroering has also adduced no documentary evidence to substantiate those payments to Trinity HR Services LLC and Trinity HR LLC
Accordingly, the branch of LEED's motion for summary judgment on the first cross-claim for fraudulent conveyance is denied.
C. Aiding and Abetting Fraudulent Conveyance (second cross-claim), Conspiracy to Commit Fraudulent Conveyance (third cross-claim)
LEED argues that the court should grant summary judgment to dismiss the second and third cross-claims for conspiracy and aiding and abetting fraudulent conveyance because LEED was formed in June 2012 and it could not have aided or abetted the alleged fraud that occurred before that time. However, the only testimony as to LEED's knowledge of any potential fraud is provided by Mr. Schroering and uncorroborated by any other source. Further, the record indicates that Mr. Schroering only paid a fraction of the alleged consideration for the Shares purchased from Big Red, without providing the customary documents for the remaining obligation.
In addition, Mr. Schroering and LEED were involved with the acquisition of GEE shares from Trinity HR LLC and Trinity HR Services LLC, and the record is silent as to what, if any, knowledge Mr. Schroering may have gained about any potential fraud in those transactions. Notwithstanding the formation of LEED in June 2012, the fraud as allegedly perpetrated by Mr. Huff, Mr. Bean, and the Simmons, among others, continued through August 2012 with LEED's acquisition of Sharessuch that there remain material issues of fact concerning LEED's knowledge of the alleged fraud and its role in the same. Accordingly, the branch of LEED's motion for summary judgment to dismiss the Intervenors' second and third cross-claim for aiding and abetting, and conspiracy to commit fraudulent conveyance is denied.
D. Breach of Fiduciary Duty (Fourth Cross-Claim)
The branch of LEED's motion for summary judgment to dismiss the Intervenors' fourth cross-claim for breach of fiduciary duty is granted because the claim as pled is only asserted against Mr. Bean, rather than LEED.
E. Aiding and Abetting Breach of Fiduciary Duty (Fifth Cross-Claim) & Conspiracy to Breach Fiduciary Duty (Sixth Cross-Claim)
The branch of LEED's motion for summary judgment to dismiss the Intervenors' fifth cross-[*7]claim for aiding and abetting breach of fiduciary duty is denied because notwithstanding Mr. Schroering's testimony that he only met Mr. Bean after November 1, 2011, there are material issues of fact concerning the nature and extent of the relationship between Mr. Bean and Mr. Schroering prior to Big Red's sale of the Shares to LEED, as well as the structure of the resulting transactions and the lack of documentation for the same. 
The branch of LEED's motion for summary judgment to dismiss the Interveners' sixth cross-claim for conspiracy to breach a fiduciary duty must be granted, however, because this claim requires that each defendant independently owe a fiduciary duty to the claimant, and there is no independent fiduciary duty owed by LEED to the Intervenors (Official Comm. of Unsecured Creditors ex rel. SmarTalk Teleservices, Inc. Bankruptcy Estate v Donaldson, Lufkin & Jenrette Sec. Corp., 2002 US Dist LEXIS 3747, at *43 [SDNY 2002] [surveying New York and California law to conclude that there can be no conspiracy to breach a fiduciary duty unless each defendant independently owed a fiduciary duty to the plaintiff])
F. Remaining Cross-Claims
LEED argues that the court should grant summary judgment to dismiss the seventh through eleventh cross-claims because these remedies are predicated on proving fraudulent conveyance. For the reasons set forth above, there remain material issues of fact concerning the claim for fraudulent conveyance such that the seventh through eleventh cross-claims should not be dismissed. 
To the extent that LEED argues that the Intervenors' claims are also barred by the doctrine of laches, the Intervenors did not neglect to assert its rights to the Shares within a reasonable time (see Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 816 [2003] [laches an equitable bar based on lengthy neglect or omission to assert a right and the resulting prejudice to an adverse party]). Although the Intervenors took separate steps to restructure the loans to O2HR before 2012, this evidence does not prove that the Intervenors neglected their rights to recover the debt owed and in fact, indicates that the Intervenors were actively seeking different ways to ensure that they would be repaid. Further, this action was commenced, in part, because the intervenor Genesis asserted a superior claim to the Shares and as of November 29, 2012, LEED was on notice that Genesis asserted a competing claim to the Shares. Thus, the branch of LEED's motion for summary judgment to dismiss the claims for laches is also denied.
Accordingly, it is
ORDERED that LEED's motion for summary judgment is granted solely to the extent that the (i) breach of fiduciary duty (fourth) cause of action and (ii) conspiracy to breach a fiduciary duty (sixth) cause of action are dismissed, and otherwise denied; and it is further
ORDERED that the Clerk is directed to enter judgment in accordance with the foregoing.
Date: 5/11/2020